# ROSS v. STATE.

CRIMINAL LAW — ATTORNEYS AT LAW — SPECIAL PROSECUTING AT-
TORNEY — CONSTITUTIONAL LAW — HOMICIDE — CRIMES — CON-
DUCT OF PROSECUTING ATTORNEY — WITNESSES — EVIDENCE —
INSTRUCTIONS — COURTS.

1. The fact that an attorney is a member of the Legislature
does not disqualify or prevent him from assisting in the prose-
cution of a criminal case upon employment by the county or
appointment by the court.

2. The fact that an attorney has formed an opinion that the
defendant is guilty does not disqualify him from representing
the State in a criminal case.

3. The fact that an attorney was district judge at the time of
an alleged murder, and as such denied bail to the defendant,
after the court commissioner had recommended that bail be
taken, does not disqualify him from assisting in the subse-
quent prosecution of defendant.

4. The conclusion does not follow from the fact that an assist-
ant prosecutor was district judge at the time of the killing
and as such denied bail to defendant, that he was prejudiced
against defendant, except in the sense that from the evidence
examined he may have formed an opinion that defendant was
guilty of the offense charged against him. In his judicial
capacity there was every inducement to decide without preju-
dice, and every presumption is that he did so.

5. Where one of the attorneys for the prosecution asked two of
defendant's witnesses to talk with him in private about their
testimony, and they refused, and it is not charged that the
counsel attempted to influence their testimony, but the wit-
nesses were afterward put upon the stand, their testimony being
favorable to defendant; and at the time when the matter was
called to the court's attention an order was made requiring
counsel for the State to abstain from interfering with defend-
ant's witnesses, it was not error for the court to deny a motion
to exclude the counsel from participation in the trial.

6. A verdict of conviction will not be disturbed on error be-
cause counsel for the prosecution, in addressing the jury,
stated that certain of defendant's witnesses had been fur-

nished with typewritten copies of what they were expected to testify to, where there was evidence to that effect.

7.  There being evidence that defendant had said he had shot Fatty Robinson in the belly, a verdict of conviction will not be reversed because the counsel for prosecution stated in his argument to the jury that defendant had said he had "shot the belly off of Fatty Robinson."

8.  There being evidence that deceased was a large, fleshy man and familiarly called "Fatty" in the community, that he had not resented it when slapped in the face by defendant, but shortly thereafter invited defendant and others to drink with him in his saloon, a verdict of conviction will not be reversed for a statement by the prosecuting attorney in his argument that the deceased was "a jolly good fellow."

9.  There being evidence that defendant and deceased were rival saloon keepers in the town, and that a few days before the killing occurred, defendant had said the deceased had not made seventy-five cents since he got there, and that "we have got it fixed so that when we get through with him, Fox's dam won't hold him," a verdict of conviction will not be reversed for a statement by the prosecuting attorney in his argument that defendant had threatened to "take the life of deceased that night."

10.  The matters aforesaid complained of in respect to the expressions of counsel for the State in their arguments to the jury, were for the consideration of the jury in passing upon the credibility of witnesses, the relations of the parties, and intent of the defendant, and were matters upon which counsel might comment in argument.  There were no such misstatements as would seem necessarily or probably misleading to the jury or prejudicial to the defendant.  Something must be credited to the intelligence of the jury, and to the attention and care of the court in the conduct of the trial.

11.  There is no error in a prosecuting attorney's calling the attention of the jury to the principle that their action is not personal but involves a public duty, and to the disastrous consequences to society in case they should render an erroneous verdict in acquitting a defendant who is guilty.  Hence a verdict of conviction will not be disturbed for a statement by the prosecuting attorney that "if you send him (the defendant) out under such circumstances as these, you say to all in the State that they could do the same as this defendant, under like circumstances as did this defendant."

12.  In this State the prosecuting attorney does not act judicially in the performance of his duties as a prosecuting officer, but he is attorney for the plaintiff, the State, and is not the attorney for defendant.   While it is true that he should exercise his official authority in protecting the innocent from prosecution, it is because he represents the State, which is interested equally in the protection of the innocent and the pursuit of the guilty.

13.  A statement in argument by counsel for the State in a homicide case, "I am going to ask you to convict a murderer," will be presumed in the absence of a showing to the contrary to have accompanied counsel's argument of the evidence in the case, and his attempt to show that it proved the guilt of defendant.   Under such circumstances the expression is not objectionable.

14.  An argument in a criminal case by a prosecuting attorney is not required to be confined to a bare rehearsal of the testimony, but its office is to assist court and jury by pointing out the bearings of the evidence, and the conclusions which may be fairly drawn from it.

15.  The argument of an attorney not being under oath, his personal belief of the guilt or innocence of the prisoner, outside of the evidence, has no place in the case, and should not be expressed or suffered to influence the jury.   But he may ask for a verdict of guilty upon the ground that the evidence, in his opinion, shows him guilty beyond a reasonable doubt.

16.  It is not ground for reversal of a judgment upon a verdict of conviction, that a foreign attorney, who had been excluded from participation in the trial, assisted counsel for the State outside of court in consultation of authorities, and in other ways, in the preparation of the case for presentation to the jury.

17.  A witness having testified that after the shooting he examined the person of the deceased, his statement that if the deceased then had a revolver upon his person, he, the witness, would have seen it, is admissible as a statement of fact: but if it be deemed a statement of opinion, it would be admissible, under the circumstances, on the ground of necessity ; that is, from the fact that all the details are incapable of being presented with their proper force to any but the observer.

18.  It is in the power of the court, and it might become its duty, in case of an attempt of the prosecuting officer to prejudice the defendant in a criminal case by the suppression of

testimony, to require the prosecutor to call the witnesses to the transaction, but it is held that no such condition existed in this case.

19. There were three eye witnesses to the homicide, one of them being a brother of the defendant. The prosecution introduced none of them, but relied upon other evidence, and resisted a motion to require them to produce said witnesses and either examine them or put them on the stand for examination, on the grounds that one was a brother of defendant, and the others, according to their best information, were under the influence of defendant's relatives and friends; that their testimony would be substantially untrue and unreliable; that they — the prosecution — had been unable to talk with them and had been enjoined by the court from doing so, they being defendant's witnesses; and did not know what their testimony would be. The defense refused to waive the order of court prohibiting the prosecution from conversing privately with said witnesses. Thereupon the court refused to require the prosecution to place such witnesses upon the stand. The witnesses were in court and were afterward examined by the defense. *Held*, that the refusal of the court to require the prosecution to call said witnesses was not error.

20. It is impossible to state in each instruction all the law applicable to the case; so, where the distinction between the different degrees of murder is elsewhere explained in the charge, it is not error to instruct the jury that "malice is implied from any deliberate and cool act done against another, however sudden, which shows an abandoned and malignant heart; and where one person assaults another with a deadly weapon in such a manner as is likely to cause death, although he had no previous malice or ill will against the party assaulted, yet he is presumed, in law, to have such malice at the moment of the assault, and, if death result thereupon, it is murder." The language of the instruction is not reasonably susceptible of the construction that the jury may convict of murder in the first degree in the absence of premeditated malice.

21. An instruction that if the defendant shot and killed the deceased with premeditated malice, he is guilty of murder in the first degree, unless the shooting "was justifiable, as explained in these instructions" is not error, and is not unfair for remitting the jury to the whole charge to ascertain what the court deemed such justification.

22. Where the evidence is conflicting, it is proper to instruct the jury upon any view of it which the jury may reasonably adopt.

23. It is not error to instruct the jury that the killing would be murder if defendant sought a quarrel with deceased, and first struck him, in the expectation that deceased would resent it and in turn attack defendant, thereby affording the latter a chance to kill him, and that accordingly deceased did attack defendant, and the latter then shot and killed him in pursuance of his said design ; where the evidence shows that defendant, having threatened deceased, went armed with a pistol to the saloon of deceased and assaulted him upon his protest against defendant's interference with a game of cards, and defendant produced evidence that after he had made an insulting remark to deceased, the latter drew a pistol and fired at defendant, and the latter then shot him.

24. An instruction favorable to defendant, and given at his request, can not be complained of by him on the ground that the evidence might have justified the court in refusing it.

25. The evidence for the State tending to show that deceased was unarmed, and that but two shots were fired,— both by defendant ; and the defense being that deceased shot at defendant, and the latter then shot deceased in his own defense; an instruction that if at the time deceased was shot he was - unarmed and made no assault upon defendant, any evidence of prior threats of deceased against defendant should not be considered is not erroneous as ignoring the principle that defendant might act upon a reasonable apprehension of danger.

26. An instruction that "to justify the taking of human life in self defense, it must appear from the evidence that the defendant not only really and in good faith endeavored to decline any conflict with the deceased, and to escape from his assailant, if he had the opportunity so to do, if he was assailed, before he fired the shot in question, but it must also appear that the circumstances were such as to excite the fears of a reasonable person that the deceased intended to take his life or to inflict upon him great bodily harm, and that the defendant really acted under the influence of such fears, and not in a spirit of revenge " * * * is not open to the objection that it directs the jury to render a decision based upon their own opinion as to whether or not the defendant was in actual danger.

27. A design and determination to kill, distinctly formed in the mind at the time the shot was fired, is not sufficient to constitute the premeditated malice essential in murder in the first degree.

28. A judgment even in a criminal case will not be reversed on account of erroneous instructions unless it appears probable that the jury were misled by them.

29. Defendant having been convicted of murder in the second degree, the judgment will not be reversed for error in the instructions defining murder in the first degree. In such case the error is harmless, and by the verdict of murder in the second degree it affirmatively appears that defendant was not prejudiced.

30. Where the jury are fully and correctly instructed as to the degree of proof and weight of evidence required to convict defendant in other parts of the charge, it is not necessary to repeat the caution as to reasonable doubt in each instruction; and in such case, an instruction that "the court instructs the jury if they find from the evidence," is not erroneous for failure in the particular instruction to inform the jury that the facts referred to must be found beyond a reasonable doubt.

31. District judges being authorized to hold all or any portion of a term, or to try any cause for each other, different judges may transact separate parts of the business of the same term.

32. The record does not disclose that the judge of the district wherein the trial was had was disposing of other business of the term while this trial was progressing before another judge, but there would seem to be no obstacle in the way of his doing so, other than such inconvenience as might arise in obtaining juries.

33. The defendant was sentenced to the penitentiary by the judge of another district who presided at the trial, who was called to try the case by the judge of the district on his own motion; and pending appeal there was a stay of execution. At the next term of the court the sentence was ordered to be carried into execution. *Held*, that the regular judge of the court had jurisdiction to make the last-mentioned order at least in the absence of a proceeding for a change of judge, notwithstanding that he had been prosecuting attorney in an earlier stage of the case.

34. But if such judge had been without jurisdiction to order the sentence to be carried into execution, it would not be ground for reversal of the judgment. Such want of jurisdic-

tion could only affect the order by which defendant was directed to be conveyed to the penitentiary.

35. All the witnesses who saw or heard the shooting testified that only two shots were fired. With the exception of three witnesses, the testimony tends to show that deceased was unarmed at the time. The three witnesses aforesaid stated that deceased fired the first shot. Two witnesses stated that, after the shooting, defendant told them he fired two shots and exhibited his pistol containing three loaded shells, two empty shells, and one empty chamber. Defendant did not testify, and the statement of the two witnesses as to what defendant told them was not denied, although defendant's brother and brother-in-law were present when he made the statement. The deceased, after the shooting, in reply to the question whether he fired a shot, stated repeatedly that he had no gun. *Held*, that the evidence was sufficient to justify the jury in believing that but two shots were fired, and that both were fired by defendant.

[Decided June 30, 1899. Information filed in District Court June 26, 1896.]

Error to the District Court, Weston County, Hon. Jesse Knight, Judge of the Third District, presiding.

Francis E. Ross was informed against for murder in the first degree, being charged with having killed Amos Robinson, at Buelah, in Crook County, on the night of June 21, 1896. The case was tried in Weston County upon change of venue, and the defendant convicted of murder in the second degree. He was sentenced to the penitentiary for life, and prosecuted error. The material facts are stated in the opinion.

*A. P. Hanson, R. H. Vosburgh,* and *N. K. Griggs,* for plaintiff in error.

Mr. Nichols, as a member of the Legislature, was ineligible to be appointed to the office of prosecuting attorney, or to act as such. (Const., Art. 3, Sec. 3; State v. Russell, 53 N. W., 441.) Judge Metz, as judge at the time of the arrest of defendant, refused him bail, and was prejudiced against him so that he ought not to have been

permitted to act as prosecutor. (People v. Dietz, 86 Mich., 430.) The prosecuting attorney should have been discharged from further management of the case by reason of his threats to defendant's witnesses.

It is only when made under the belief of impending death that the declarations of a deceased are admissible in evidence. (96 Cal., 125; 48 Vt., 636; 30 id., 377; 57 Ind., 46; 70 Mo., 594; 8 Jones, 463; 63 Miss., 313; 10 S. E., 616.)

What a witness may have said elsewhere is absolutely immaterial save as it may affect his credibility. He may not be first asked as to such former statement, and then cross-examined as to its truth or falsity.

The fact as to whether or not it was material and proper to ask Hoffmeister if he could have heard the report of the pistol shot, depended upon a large number of other facts in regard to which he had not been interrogated. Therefore, it is urged that it was error, prejudicial to defendant, to allow him to answer the question. .

It is error to allow a witness to state conclusions which it is the province of the jury alone to draw from the facts detailed by him touching the matters in question.

The eye witnesses should have been produced as witnesses for the State. (State v. Magoon, 50 Vt., 333; Donaldson v. Com., 95 Pa. St., 21; Rex v. Holden, 8 C. & P., 606; Rex v. Chapman, id., 558; Rex v. Bull, 9 id., 22; People v. Dietz, 86 Mich., 419; People v. Swetland, 77 id., 57; People v. Davis, 52 id., 573; 39 id., 312; 25 id., 415; Ter. v. Hanna, 5 Mont., 248; Whar. Cr. Ev., 448; Roscoe Cr. Ev., 210.) Some, at least, of the eye witnesses should be called by the prosecution. The character of the accused can be put in issue only by himself. The statements of counsel objected to were prejudicial to defendant and unwarranted by the evidence. (71 Fed., 463.) The legal assistance rendered by the foreign attorney, disqualified from assisting in the prosecution, should cause a reversal.

The twelfth instruction authorized a verdict of murder

generally, although the facts therein detailed would constitute murder in the second degree only. It is, therefore, error. (State v. Andrews, 84 Ia., 88; State v. Adams, 78 id., 222.)

Instruction 14 declares that the design and determination to kill, constituting premeditation, may be formed in the mind at any moment before, *or at the time the shot was fired.* It, therefore, fails to discriminate between the two degrees of murder, and gives the jury the right to find the higher without there having been any premeditation. Only malice may be inferred from the killing — not premeditation. (State v. Turner, Wright (O.), 20; State v. Town, id., 75; Bennet v. State, 10 O. O., 84; Kinkead's Ins., 162.) And even the doctrine that malice is to be presumed from the proof of killing, without more, is now being discarded, if indeed in fact it is not already overthrown. H. & T. Cas. Self Def., 938, n. And premeditation can not arise simultaneous with the shooting, nor even in the midst of the affray. Fahnestock v. State, 23 Ind., 263. The true rule, upon reason and authority, is that there can possibly be no premeditation save in case there has been time for passion to cool and reason to regain control. McCann v. People, 5 Cr. Def., 1089; State v. Moore, 5 Cr. Def., 1107 (69 N. O., 267); Rogers v. People, 15 How. Pr., 558; People v. Johnson, 1 Park. Or. Rep., 219; People v. Clark, 7 N. Y., 385; Horrigan & T. Cas. Self Def., 199; Whart. on Homicide, 35; Whart. Cr. Law, 922. And as showing that the degree of homicide does not depend on the presence or absence of intent to kill, but solely upon that of deliberation and malice, see People v. Freel, 48 Cal., 436; People v. Crowey, 56 id., 36.

Instruction 15 declares that if the accused killed the deceased, then no matter what the provocation, and no matter what the surrounding circumstances may have been, unless the act of shooting was justifiable as explained in the charge of the court, the jury should return a verdict of murder in the first degree. The objection to this is

that it does not itself pretend to give any light as to the
circumstances which would have justified the act of the
accused, but very unfairly to him, remits the jury to the
whole charge to ascertain what the court deemed such
justification.

There was no occasion for the giving of instruction 16.
The evidence showed that after the first trouble in the
saloon, the accused started quietly home, and that some
time later the deceased followed the former down near to
the bridge, where he made threats of violence evidently
directed toward the accused. This instruction, therefore,
was without occasion for its giving, and in addition, was
exceptionally prejudicial to the defendant, as it might well
have been, and probably was, taken by the jury as a hint
as to the court's view as to the cause of the homicide.

Instruction 17 we claim to be entirely out of harmony
with the evidence in the cause, and hence erroneous, as
no assumptions, not actually supported by the testimony,
are permissible against an accused. Beard v. United
States, p. 559.

Surely there was not a word of proof justifying a pos-
sible supposition that the accused assaulted or violently
struck the deceased with his hand, or insulted him in order
to provoke him into assaulting the former, by reason of
which the accused might have a chance to shoot the de-
ceased. The difficulty in which the accused struck the
other, was in the saloon, a considerable time and distance
from the final affray. Not only was the difficulty there
fully ended, but nothing was done or spoken by accused
in that altercation which could be tortured into the sup-
port of a conjecture, saying nothing of a finding, that the
accused then intended to provoke an assault by the de-
ceased, so that he might have a chance to shoot the other.
In considering this charge, it should not be forgotten that
the two transactions — the one in the saloon, the other
near the bridge — were not only distinct, *there being no
attack by the deceased in the saloon*, nor *striking by the
accused at the bridge*, but the court itself, in another

charge, actually divorced the two transactions, saying that the difficulty at the saloon could be considered for no other purpose than that of showing the state of feeling existing between the parties at the time of the later affray.

Again, particular attention is called to another error in this instruction. In the latter part of this charge, the jury are told that if *they believed from the evidence*, that in accordance with such expectation, the deceased did attack the defendant and the defendant then shot and killed him, in pursuance of such design, the killing was murder. Observe, that as to this latter and most important conclusion to be found by the jurors, they are simply instructed that if they *believed from the evidence*, all references as to the degree of their belief, and all allusions to being convinced beyond a *reasonable doubt*, being absolutely omitted.

Before a verdict of guilty can be returned, the jury must find from the evidence adduced and the proofs admitted on the trial, that each and every fact necessary to be proved has been separately and independently established with a degree of certainty which will exclude from the jurors' minds every other reasonable conclusion except that of guilt. (Kinkead's Ins., 159.)

The twentieth instruction erroneously ignores the right of the accused to have acted upon reasonable apprehensions of imminent danger.

The objections to instruction 23 are twofold.

1. It begins by negatively yet erroneously declaring that the jury should convict in case the defendant committed the offense, entirely omitting to state that, in addition to the fact of committing the offense itself, it was necessary to a conviction that it should also be found, beyond a reasonable doubt, that the accused had no legal excuse or justification for doing the deed.

2. As if to emphasize the fact that the court deemed an acquittal impossible under the evidence, the attorneys for the prosecution cause the law to be again charged, in careful detail, as to the three verdicts of *guilty* which might

be returned, but omitting, as if by studied design, the other one of *not guilty* which might also be found. And then, as if further to challenge the attention of the jurors to the necessity of their convicting the defendant, a lengthy discussion is made, to follow which, especially in view of the fact that a possibility of innocence is not even suggested, could hardly do otherwise than to impress them with the thought that the court feared that there was great danger of their shirking their duty by their failing to find a verdict of guilty. All this was not only unjust to the defendant, because of the immense influence which even a hint wields over the jury from an able and respected judge, but we strongly insist that it was so grievous an error as to render a new trial absolutely necessary.

The objection to instruction 24 is that the jury were permitted thereby to decide upon their own opinion whether defendant was in actual danger instead of determining how a reasonable man would have acted situated as defendant was.

Instruction 28 links, by assumption, the *arming* by defendant with his *assault* on deceased, as if the proof showed that he actually did arm for the purpose of making, and then actually did make, impliedly with such weapon, the very assault for which he had so maliciously prepared himself. This was not justified by any testimony whatever, the only evidence there was on the subject conclusively showing, (1) that he carried the revolver that evening just as it was his custom to do when taking the day's money; (2) that he went into the saloon with an entirely proper purpose, and there quietly kept count of the game, as anyone might well have done under similar circumstances; and (3) that when the trouble did arise over what he took to be an imputation as to the honesty of his counting, he used the open hand to express his resentment, neither making any attempt to use, nor expressing any thought of using, his revolver in the difficulty. It treats, by assumption, the language of defendant, just before the shooting, as being the cause of the affray, en-

tirely ignoring the admitted fact, as shown by George Stotts as well as all the other witnesses, that the first word uttered, either of offense or threat, came from deceased himself.

It suggests, by assumption, defendant's purposed creating of the necessity for the shooting, which, we submit, was entirely unwarranted under the proofs.

It never once directs the jurors that they must be satisfied *beyond a reasonable doubt* before finding against the defendant upon the questions, or any of them, presented in the instruction and of such vital importance in the controversy.

It is contended that two terms in the same district can not be held at the same time. Judge Stotts was holding a term in the same county as that where the trial was occurring. Judge Stotts having acted as prosecuting attorney in the earlier stages of the case (before the trial) was without jurisdiction to order defendant to be taken to the penitentiary.

*J. A. Van Orsdel,* Attorney General, and *Nichols & Adams,* for the State.

Fourteen of the errors assigned were not called to the attention of the lower court by motion for new trial, and hence can not be considered. (Miller v. State, 3 Wyo., 658; 85 Ind., 507.) The case was instituted in Crook County and tried in Weston upon change of venue. M. B. Camplin was prosecuting attorney of Weston County. Mr. Nichols was employed by Crook County to assist in the prosecution. His membership in the Legislature in no way prevented him from acting under such employment. (R. S., Sec. 1894; L. 1890, Ch. 149, Sec. 149.) Judge Metz was not disqualified from assisting the prosecution by reason of his performance of a judicial duty in the case at the time of defendant's arrest. These objections to counsel were raised in the trial court, discussed and dis posed of by the trial judge, and are not subject to review unless it be clearly shown that there has been an abuse of

discretion on the part of the court. (Bartley v. State, 73. N. W., 754; Lindsay v. State, 64 id., 716; Grossman v. State, id., 354; McMahon v. State, id., 694; Carleton v. State, 61 id., 699.)

The record does not disclose that defendant was prejudiced by the act of one of the attorneys for the prosecution attempting to talk with defendant's witnesses. There were no threats made, and no abuse of discretion on the part of the court.

A witness may under some circumstances give his conclusions as the result of a thorough investigation on his part. The witness who examined the deceased for a revolver was in a position to state whether if he had one he would have seen it, and the evidence was admissible. (Sydleman v. Beckwith, 43 Conn., 9.)

That the prosecution is not to be required in all cases to call the eye witnesses is sustained by many authorities. State v. Martin, 2 Iredell, 101; State v. Smallwood, 75 N. C., 104; State v. Kilgore, 70 Mo., 546; State v. Eaton, 75 Mo., 586; United States v. Butler, I. Hughes U. S. C. C., 457; McLain's Criminal Law, Vol. 1, Sec. 410; Keller v. State, 123 Ind., 110. One of the witnesses being defendant's brother, and the others subpœnaed by defendant, and under his control so that counsel for prosecution could not talk with them; and the defense refusing to waive the court's order made, at their request, forbidding counsel from talking with them about this testimony, constituted ample reasons for the court's ruling that the State was not required to place them on the stand.

All the statements of fact by counsel for the State in argument objected to by plaintiff in error were supported by the evidence.

The twelfth instruction as to malice is well sustained by the authorities. (Sackett on Inst., 694; Archie v. State, 64 Ind., 56; State v. Gee, 85 Mo., 647; State v. Shelliday, 8 Ia., 585; Cotton v. State, 32 Tex., 626; Jackson v. People, 18 Ill., 270.)

The instruction defining the premeditation sufficient to constitute murder in the first degree correctly stated the law. (Rice on Cr. Ev., 456; Allen v. U. S., 164 U. S., 492; U. S. v. King, 34 Fed., 302; 2 Thompson on Tr., 2210; Sackett on Instructions, 685, and cases cited.) There is no law in this State which requires the court to instruct upon all phases that might possibly be claimed to have arisen under the evidence by the defense, and before the defendant can complain of any error of the court to instruct upon any given point, he must first call the attention of the court to that point by a request of proper instruction thereon. When the State has clearly shown by its evidence that the deceased came to his death at the hands of the defendant, and no excuse justifiable or otherwise is shown by the State's evidence to have existed, the burden is upon the defendant by his testimony to show such excuse or justification, and the court has a right in an instruction to give the view of the case under the law as shown clearly to exist by the evidence introduced on behalf of the State. (Nevling v. Com., 98 Pa. St., 322; Spies v. People, 6 Am. Cr. R., 570.) It is a rule of universal application that instructions must be considered together, and, if then they correctly announce the rule, they will be upheld. (Mills v. State, 73 N. W., 761; Bartley v. State, id., 758.)

A homicide is not justifiable, even if the killing was in self-defense, if in fact the defendant, armed with a deadly weapon, sought out the deceased and by insulting language intentionally provoked the assault of the deceased, and with the purpose of using his weapon in an emergency. State v. Scott, 43 N. W., 62.

Neither will a homicide be justified or excused or even mitigated by the mere fact itself that the deceased and the defendant were in actual combat at the time of the homicide. Justification and excuse for taking human life must arise out of the circumstances in which the killing took place. If it appears that a person armed with a deadly weapon on being assaulted takes advantage of the assault

to kill his assailant, and in execution of his purpose does kill him, not in the heat of passion caused by the assault, nor in reasonable self-defense, it is murder. People v. Robertson, 8 Pac., 600; Clark's Criminal Law, 115: Allen v. U. S., 164; U. S., 492; State v. Levigne, 30 Pac., 1084; Morris v. Platt, 32 Conn., 81.

Whether Judge Stotts made the order that the sentence be carried into execution is immaterial, since the order is but a formal method, provided by statute, for carrying into effect the judgment of the court already made and entered.

CORN, JUSTICE.

The defendant (plaintiff in error) was charged with murder in the first degree in the killing of Amos Robinson, at Beulah, in Crook County, on the night of June 21, 1896. The case was tried in Weston County, on change of venue, the defendant convicted of murder in the second degree, and sentenced to the penitentiary for life. Numerous errors are assigned upon the record in this court, but a number of them were not brought to the attention of the trial court by the motion for a new trial, and will not be considered.

Objection was made to Mr. Nichols acting as one of the attorneys for the prosecution, upon the ground that he was at the time a member of the Legislature. The court overruled the objection and made an order appointing him to assist in the prosecution. The Constitution, Art. 3, Sec. 8, provides that "no senator or representative shall, during the term for which he was elected, be appointed to any civil office under the State." But Mr. Nichols was a member of the bar of this court, and as such permitted to practice in all the courts of this State. The evidence presented to the trial court upon the objection shows that he was employed by the authorities of Crook County to assist in the prosecution of this case. We may presume that the motive of the presiding judge in appointing him to assist in the prosecution, upon objection being made to

his appearing as counsel, was to assert complete control over the conduct of the prosecution by making the counsel a specially appointed officer, and as such under the court's control for the purposes of the trial, thus giving assurance that though acting under a special employment, he would be held within the same restrictions as the regular prosecuting officer of the county. This precaution was in the direction of the defendant's interest and not improper, though, in our opinion, it was not necessary. We do not think it was the purpose of the constitutional provision to make the holding of a seat in the Legislature a misdemeanor such as would disbar an otherwise reputable attorney from the practice of his profession during his incumbency of the office. And as an attorney of the court he was one of its officers, and, without such special appointment, all his actions were under the supervision and control of the court throughout the trial. Its powers under such circumstances are ample to secure an orderly procedure and fully protect the rights of the defendant.

The same considerations measurably apply to the objection that Mr. Metz was permitted to appear as an attorney for the State, and was in like manner appointed by the court for the purpose. But in the case of the latter the reason urged for his exclusion was that at the time of the alleged murder he was the presiding judge of that district, and, as such, had denied bail to this defendant, after the court commissioner had reported the circumstances of the killing to him, with a recommendation that bail be taken. For this reason it is insisted that the counsel is shown to have been prejudiced against the defendant, and therefore disqualified from appearing as an attorney for the State. We do not think the conclusion follows that he was prejudiced against the defendant, except in the sense that from the evidence examined by him he may have formed an opinion that the defendant was guilty of the offense charged against him. In his judicial capacity the was every inducement to investigate and decide without prejudice. Every presumption is that he did so, and there is

no proof whatever that he did not. And there is no reason for saying, and so far as we know it has never been held, that the fact that an attorney has formed an opinion that the defendant is guilty disqualifies him from representing the State in a criminal trial. We are referred to two cases in support of defendant's view. State v. Russell, 83 Wis., 330; and People v. Deitz, 86 Mich., 430. In the first, under a statute authorizing the judges to appoint counsel to assist the district attorney, it was decided that such counsel must be a resident attorney of the State. It does not bear upon the question here. In the Michigan case the question was as to the duty of the prosecuting attorney to introduce certain witnesses, and in deciding it the court say: "The public prosecutor is not the plaintiff's attorney, but a sworn minister of justice, as much bound to protect the innocent as to punish the guilty." From this language, counsel for the defendant argue that it is error to permit an attorney who is prejudiced against the defendant, to act as prosecutor in his case. But even if the Michigan decision were the law in this State, we do not think it involves any such impossible requirement as that an attorney, after such a thorough investigation of the facts of a crime as the proper preparation of the case for trial would make necessary, should remain entirely unbiased between the State and the defendant, in order to be qualified to act as an attorney for the prosecution.

There are a number of errors assigned under the general head of misconduct of the attorneys for the prosecution. It is alleged that one of them went to two of the witnesses and requested to talk with them in private as to what they knew of the facts of the case; that they refused, and he then told them that he was an officer of the court, whose duty it was to prepare the case, and that if they did not, he would have them arrested for contempt of court. This the counsel denies, except that he asked them to talk with him in private about their testimony, and that they refused. The matter was presented to the trial court with

a motion that, on account of such misconduct, the attorney should be excluded from participation in the trial, and asking for an order that the counsel for the State be required to abstain from interfering in any manner with the witnesses for the defense.  The court denied the motion to exclude the counsel, but made the order prohibiting the counsel from interfering in any manner with defendant's witnesses.  These witnesses were afterward put on the stand by the defense, their testimony being decidedly favorable to the defendant.  It is not charged that counsel, by threats or otherwise, made any attempt to influence their testimony.  Not only was this matter disposed of by the trial court, but it affirmatively appears that the defendant was not prejudiced; and it does not appear that the act of counsel was intended, or had any tendency, to prejudice his case.  The court below made such orders as seemed necessary for the orderly conduct of the trial, and, in the absence of any prejudice to the defendant and any charges against counsel, there is nothing which appeals to this court for its action.

It is also alleged as misconduct that counsel in their addresses to the jury stated that certain of defendant's witnesses had been furnished with type-written copies of what they were expected to testify to, and that the evidence did not justify such assertion; that defendant after the shooting said he had "shot the belly off of Fatty Robinson," and that the evidence did not so show; that the counsel stated that the evidence showed that the deceased was "a jolly, good fellow," and that the evidence did not so show; that the defendant had threatened to "take the life of the deceased that night," which the evidence did not show.

There is evidence in the record bearing upon each one of these statements of counsel.  It appears that some time prior to the trial, counsel had taken down the testimony of these witnesses, and shortly before they were to be examined they were handed a type-written copy of it.  This was doubtless done that they might refresh their memories as to former statements made by them.  Rice upon

being asked: "Is it not a fact that you have had a type-written copy of your evidence to be given by you in this case for the purpose of. examination for a long time?" replied that it was not true that he had had it for a long time, but said, "I saw it when I came over here." We do not find in the record that defendant is said to have stated that he had "shot the belly off of Fatty Robinson;" but a witness states that he said he had shot Fatty Robinson in the belly. There was no evidence in terms that Robinson was a "jolly, good fellow." But the evidence showed that Robinson was a very large, fleshy man, and that he was familiarly called "Fatty" in the community. That he had not resented it when slapped in the face by the defendant, but a few minutes afterward had invited defendant and others to drink with him at the bar of his saloon. As to the alleged threat of the defendant to take the life of the deceased, the words used by counsel do not appear in the evidence. But there is evidence tending to show that Ross and Robinson were rival saloon keepers in the town. And a witness states that a few days before the shooting, he asked Ross how Robinson was getting along, and Ross replied that he had not made seventy-five cents since he got there, and added, "We have got it fixed so that when we get through with him Fox's dam won't hold him." It seems to us that these were matters for the consideration of the jury in passing upon the credibility of the witnesses, the relations of the parties, and the intent of the defendant. They were matters upon which counsel might comment in argument. They were things that would have greater or less weight with the jury in view of the manner of witnesses upon the stand and the numberless incidents of the trial which do not reach this court. There is no such misstatement of the evidence as would seem necessarily or probably misleading to the jury, or prejudicial to the defendant. Something must be credited to the intelligence of the jury, and to the attention and care of. the court in directing the conduct of the trial.

In the same category of misconduct of counsel, it is assigned as error that counsel in argument used the following language: "If you send him (the defendant) out under such circumstances as these, you say to all in the State that they could do the same as this defendant under like circumstances as did this defendant." It is said that the State had no right to ask for a verdict of guilty upon any other ground than actual guilt, and that this was an appeal for conviction based upon the effect that an acquittal would have upon the public. This is a very strained construction of the language quoted. There is no expressed request that the defendant shall be convicted whether guilty or innocent; and we are unable to perceive that any such request is implied. If the actual objection is that a jury may not be reminded that their action is not personal, but involves a public duty, and that their attention may not be called to the disastrous consequences to society in case they should render an erroneous verdict in acquitting a defendant who is guilty, then we must withhold our assent from this statement of the law. The penalties assessed against criminals are intended not only as punishment for the particular crime, but also as examples to deter others from the commission of similar offenses. There is no error in calling the attention of a jury to this principle and thus impressing upon them the importance of a verdict of guilty, if the defendant is so proven. We think this statement of counsel was not only harmless, but entirely legitimate.

The thirty-second assignment of error, which belongs to the same general class and is very earnestly urged as requiring a reversal of the judgment, alleges misconduct of one of the attorneys for the State in saying in his address to the jury, "I am going to ask you to convict a murderer." The connection in which the words were used is not stated. We must presume in the absence of any showing to the contrary, that they accompanied the counsel's argument of the evidence in the case, and his attempt to show that it proved the defendant to be guilty

of the crime of murder. If so, I confess myself unable to see that they could have prejudiced the defendant, or that the expression was objectionable upon any legal ground. It is not contemplated, we think, that an argument in such a case shall be a bare rehearsal of the testimony, but its office is to assist court and jury by pointing out the bearings of the evidence and the conclusions which may be fairly drawn from it. It is true that the argument of an attorney not being under oath, his personal belief of the guilt or innocence of the prisoner outside of the evidence, has no place in the case, and should not be expressed or suffered to influence the jury. But that is not this case, and we see no reason why an attorney for the State may not ask for a verdict of murder against the defendant upon the ground that the evidence, in his opinion, shows him to be guilty of that crime beyond reasonable doubt.

In support of this assignment, and as bearing generally upon the duties of counsel for the State, we are referred to People v. Deitz, supra, and to the cases cited under Section 706, Abbott's Trial Brief. The first case has already been adverted to. In People v. Quick, 58 Mich., 321, the prosecuting attorney said: "I stand here to-day under the solemnity of my official oath, and say to you, as a man and a citizen, that I believe the defendants not only lied, but I believe that they committed willful and deliberate perjury." The trial court refused an instruction taking it from the jury. The court in reversing the conviction say: "This language came from an officer whose sworn duty required him to act only in furtherance of justice, and who is bound by statutory requirements to stand entirely impartial between the complainant and the prisoner. When such an officer gives the jury to understand that what he says is under the sanction of his official oath, and the court, when applied to, declines to correct that statement, it can not be supposed that jurors may not give credence to it and govern their decision more or less by it." The grounds of the reversal do not apply

to the case at bar. In People v. Dane, 59 Mich., 550, which was a trial upon a charge of larceny, the prosecuting attorney, in addressing the jury on behalf of the people, asserted to the jury that he "knew that the defendant was the man who took the money." And the court say, "It is improper for one occupying the position of the prosecuting officer to make a statement to the jury of a fact, as of his own knowledge, which has not been introduced in evidence under the sanction of an oath, relating to the material issues in the case." These cases seem to have been decided under a statute imposing rather unusual restrictions upon the prosecuting officer, but in any event do not sustain the view insisted upon by the plaintiff in error. In Hardtke v. State, 67 Wis., 557, the prosecuting officer, in his address to the jury, said: "The defendant confessed this crime to me." The officer had offered himself as a witness, and the court held that the language detailed from the witness stand by him did not constitute a confession of the crime, and that the statement in the address should have been corrected by an instruction. In Martin v. State, 63 Miss., 505, the words complained of were: "Martin, the defendant, is a man of bad, desperate, and dangerous character; but I am not afraid to denounce him, although I may, on returning to my home, find it in ashes over the heads of my defenseless wife and children." No evidence as to character had been offered, and the court held it to be reversible error. In State v. Smith, 75 N. C., 307, the prosecuting attorney in his address to the jury said: "The defendant was such a scoundrel that he was compelled to move his trial from Jones County to a county where he was not known;" and again: "The bold, brazen-faced rascal had the impudence to write me a note yesterday, begging me not to prosecute him, and threatening me that if I did, he would get the Legislature to impeach me." The court say that these things were not and could not have been received in evidence, and yet were allowed to go to the jury with all the force and effect of competent testimony, unexplained and uncor-

rected by the charge of the court; that they were prejudicial to the defendant and reversible error. These authorities are so much aside from the objections insisted upon in this case that we think further comment upon them is unnecessary.

It is true that the Michigan decisions say that "the public prosecutor is not the plaintiff's attorney, but a sworn minister of justice, as much bound to protect the innocent as to pursue the guilty." And the statute of that State authorizing the procurement of counsel to assist the public prosecutor provides that "no person or attorney shall be employed as assistant who is interested as attorney or otherwise in any case involving the same facts or circumstances involved in said criminal suit, or who has received any compensation from any person or persons who are interested in prosecuting the party charged with said felony." But the law of this State does not impose upon the prosecuting attorney judicial functions in the sense, or certainly not to the extent, intimated in the Michigan cases. By Section 1894, Rev. Stat. Wyo., it is provided that "every county and prosecuting attorney shall appear in the district court in behalf of the State and the county in which he may be elected or appointed in all indictments," etc. By Section 1896, it is provided he shall "not prosecute or defend for any individual or corporation in any civil or criminal suit, or proceeding at law, in which this State or his county may be a party, but in all such cases he shall prosecute or defend for said State or county." We think it is quite clear that under these statutes, he is the plaintiff's attorney in criminal cases. By Sec. 133, Chap. 73, Laws 1890, he is prohibited from entering a nolle prosequi except by order of the court upon his written motion setting out the reasons therefor. This clearly contemplates that, in the exercise of his official duties, he may be required to prosecute persons whom he does not believe to be guilty. In such case it is evident that he does not act judicially in the performance of his duties. His belief may be erroneous, and the law does

not lodge with him the final determination of the question of guilt. He is the attorney for the plaintiff, the State, and he is not the attorney for the defendant. Our statutes do not treat him as such, or contemplate that the defendant shall rely upon such defense as might be made for him by the attorney for the State. But Sec. 3259, Rev. Stat., provides that if a defendant be without counsel and unable to employ any, it shall be the duty of the court to assign him counsel at his request, and such assigned coun-. sel are to be paid out of the county treasury. It is no doubt true that he should exercise his official authority in protecting the innocent from prosecution, but it is because he represents the State, which is interested equally in the protection of the innocent and the pursuit of the guilty.

A further assignment of error has reference to the acts of an attorney of a neighboring State who offered to take part in the case as one of the attorneys for the prosecution.

Objection was made by the defendant and he was excluded by the court from participating in the trial. It is admitted that he took no part in the examination of witnesses, in the argument of questions to the court, or in the argument of the case before the jury. But defendant insists that in all other respects he acted as an attorney throughout the trial. The attorneys for the State set up on the other hand that he assisted only outside of court in the consultation of authorities, and in other ways in the preparation of the case for presentation to the jury. Where the rule prevails of excluding foreign attorneys from assisting in the prosecution of criminal cases, it is largely a question of the orderly conduct of the trial, and the rule is based upon the necessity of the court having under its control and within reach of its process all persons who assume to represent the State in a public prosecution. It would be going very far to say that counsel shall consult with no other than an officer of the court in the preparation or conduct of a criminal case. The proper preparation of a case for trial is not error, but upon the contrary is a praiseworthy exercise of the learning and

industry of counsel and tends to promote correct decisions and righteous verdicts. The reason of the rule, in the absence of any statute, undoubtedly is that the court may be in condition to hold attorneys responsible for any violation of good order in court, or the laws of the State, or the rights of the accused, and it entirely fails under the circumstances here presented. The work ascribed to the non-resident gentleman might have been performed by any person of sufficient intelligence, without regard to whether he was an attorney at law of this or any other State. He was not exercising any functions which required a license to practice law or any authority from the State or the court. Moreover, the trial court made its order excluding him as an attorney from participating in the trial, the evidence upon that subject was presented to the court, and it did not find that there had been any violation of such order. . There is no suggestion of any specific prejudice to the defendant, and we are unable to discern the error complained of.

It is further objected that the court erred in permitting a witness to answer the question whether if the deceased after the shooting and after he had returned to his saloon had had a revolver upon his person, the witness would have observed it. This is objected to as calling for an opinion and not for the statement of a fact. The general rule is that non-expert witnesses must state facts and not opinions, though there are a number of well-established exceptions. It is also often difficult to tell whether a question calls for an opinion or a statement of facts. In this case the witness stated that when he reached the deceased he was standing at the porch in front of the saloon. That they went into the house together and into the back room, and that the witness lighted a lamp. That he asked deceased if he shot, and deceased said he had no gun. That he then examined all around his person and felt his pockets; that if he had had a gun he would have seen it, and that he had none. Also that the deceased did not lay anything down after he reached him, and if he had, the

witness would have seen it.   If this be deemed an opinion at all, it is admissible upon the ground of necessity. That is from the fact that all the details are incapable of being presented with their proper force and significance to any but the observer.   Clifford v. Richardson, 18 Vt., 626; Sloan v. N. Y. C. R. R. Co., 45 N. Y., 125.   It being impossible in such cases to give the jury or court a fair or intelligible understanding of the matter in controversy without having the witness give his own opinion from the facts, such opinion is received in furtherance of justice.   7 Am. and E. Ency. of Law, 492, and cases cited.   But while the distinction is narrow, the testimony here objected to would seem to be rather the statement of a fact than the expression of an opinion.   If, for instance, a witness is asked whether a designated person at a particular time and place had any weapon in his right hand, he may unquestionably answer that he had not, and it is received as the statement of a fact.   Yet, it is a negative proposition, and when analyzed amounts to no more than the statement that he saw no weapon in his hand, and that if he had had one, he would have seen it.   So, a witness may testify, as a matter of fact and not as a matter of opinion, that a particular person was not present at a designated time and place.   Yet, it is only the statement of the two facts that he did not see him, and that he would have seen him if he had been present.   So, in the present case the statements of the witness that he saw no pistol upon the person of the deceased, and that if there had been one he would have seen it, seem to be only the statement of two facts which illustrate to the jury the degree of certainty with which the witness is able to state that the deceased had no pistol upon his person at that time. But in either view, we think the statement was properly admitted.   Cavendish v. Troy, 41 Vt., 99.

Besides the defendant and the deceased, there were three eye-witnesses to the shooting, Rice, Fuller, and George Ross, the latter a brother of the defendant.   The prosecution introduced none of these, but relied entirely upon

other evidence.   At the close of the case for the State,
the defendant asked the court to require the prosecution to
produce these witnesses and either examine them or put
them on the stand for cross-examination by the defense.
The attorneys for the State resisted this request upon the
ground that they had not been able to talk with the wit-
nesses named, and were enjoined by the court from attempt-
ing to do so, and did not know what their testimony would
be.   That Ross was a brother of the defendant, and that
from the best information they could obtain Rice and
Fuller were under the influence and control of the defend-
ant's relatives and friends, and that their testimony upon
the material facts in the case would be substantially un-
true and unreliable.   The court inquired if the defense
would waive the order and permit the attorneys for the
prosecution to converse privately with these witnesses as
to their testimony, and upon the refusal of the defense
to waive the injunction, the court refused to require the
prosecution to place the witnesses upon the stand.   The
defendants excepted.

There is some conflict of authority upon the question
whether all or any of the eye-witnesses to the transaction
must be introduced by the State.   Formerly in England
the defendant in capital cases was not entitled to a sub-
pœna nor to call witnesses at all.   Afterward when the
practice grew up of allowing witnesses for the defendant
to be heard, they were not sworn and their attendance
could not be compelled.   Roscoe's Crim. Ev., 102.   Un-
der these conditions, if the defendant was to be permitted
to make any defense at all, it was necessary that the pros-
ecution should be required to produce the eye-witnesses
and have them sworn.   And it seems to have been the
rule in England that the prosecution would be required to
call all the eye-witnesses, or the court would, in its dis-
cretion, call and examine them upon its own motion.   By
the modern English rule, however, the prosecutor is not
bound to call all the witnesses on the back of the indict-
ment; but he must have them in court in order that

the prisoner may examine any of them whose evidence he may require. And if the prisoner call them, he makes them his witnesses. Arch. Crim. Pl. & Pr. (7th ed., Waterman's notes), 583. The courts of Michigan and Montana adhere to the former English rule, except when the witnesses are too numerous. The reason given by the Michigan court is that all of the facts of the transaction must be given to the jury by the prosecution, and that a conviction can not properly be claimed upon evidence which expressly, or by implication, shows but part of the res gestæ, if it appear that the evidence of the rest of the transaction be obtainable. But the courts of both of these States seem to carry the rule further than the reason would require and enforce the calling of all the witnesses, except when too numerous. Hurd v. People, 25 Mich., 406; Wellar v. People, 30 Mich., 22; People v. Germaine, 101 Mich., 485; Ter. v. Hanna, 5 Mont., 248; State v. Metcalf, 17 Mont., 417.

In the great majority of the States where the question has been passed upon, however, the decisions are the other way. State v. Martin, 2 Ired., 101; State v. Smallwood, 75 N. C., 104; State v. Eaton, 75 Mo., 586; Winsett v. State, 57 Ind., 26; Keller v. State, 123 Ind., 110; State v. Cain, 20 W. Va., 679; Morrow v. State, 57 Miss., 836; Hale v. State, 72 Miss., 140; Hill v. Com., 88 Va., 633; Clark v. Com., 90 Va., 366; Bressler v. People, 117 Ill., 422; Selph v. State, 22 Fla., 537; Kidwell v. State, 35 Tex. Cr. R., 264. It is said in State v. Martin, supra, "the persons present are not the witnesses of the law, like persons who have attested a will. It is in the discretion of the prosecuting officer, as of any private suitor, what witnesses he will call. He examines such as he deems requisite to the execution of the public justice. If others can shed more light on the controversy, or place it in a new point of view, it is competent for the prisoner to call them." And as said by the supreme court of Oregon in State v. Barrett, 54 Pac., 809, "it does not seem to us, therefore, that the State should be compelled

to call and vouch for a witness, even though it be evident that he knows all about the facts, when the prosecuting officer, acting in good faith, and under his official oath, is of the opinion that he will by false swearing, or by the concealment of material facts, attempt to establish the innocence of the defendant.'' As the State does not desire the conviction of any innocent person, we have no doubt of the power of the court, and it might become its duty, in case of any attempt of the prosecuting officer to prejudice the defendant by the suppression of testimony, to call, or require the prosecutor to call the witnesses. But no such condition exists in this case. The witnesses were in court, were afterward examined by the defendant and he received whatever advantage he was entitled to from their testimony. It may be observed also that we have a statute (Laws 1895, Chap. 68) that a party producing a witness may prove that he has made, at other times, statements inconsistent with his testimony, so that a defendant may protect himself if a witness testifies otherwise than he had reason to expect.

The plaintiff in error also urges a great number of objections to the charge of the court. Instruction 12 given for the State explains malice and closes with the statement that '' malice is implied from any deliberate and cool act done against another, however sudden, which shows an abandoned and malignant heart, and where one person assaults another with a deadly weapon in such a manner as is likely to cause death, although he had no previous malice or ill will against the party assaulted, yet he is presumed in law to have such malice at the moment of the assault, and if death result therefrom, it is murder.''

It is contended that the term '' murder,'' including both degrees, the jury are by this language informed they may convict of murder in the first degree, though there was no premeditated malice. The language is not reasonably susceptible of such construction. It must be construed to mean what it says; that under such circumstances the crime is murder. The distinction between the degrees is

explained elsewhere in the charge. It is impossible to state in each instruction all the law applicable to the case.

A similar objection is made to instruction 15, which informs the jury that if the defendant shot and killed the deceased with premeditated malice, he is guilty of murder in the first degree, no matter what the surrounding circumstances, unless the shooting "was justifiable as explained in these instructions;" and it is said to be unfair to the defendant to remit the jury to the whole charge to ascertain what the court deemed such justification. The objection is without any reasonable ground whatever. It is not only impossible to rehearse in each instruction every principle of law involved, but it would only create confusion and obscurity to attempt it. Moreover, the judge was careful to inform the jury by an instruction given upon its own motion, that the instructions should be considered as a whole and that a verdict should not be based upon any one of them to the exclusion of any other.

The 17th instruction given upon request of the prosecution is as follows: " If defendant sought a quarrel with deceased, and first struck him a violent blow with his hands or insulted him in the expectation that deceased would resent it, and in turn attack the defendant that he might have a chance to shoot him, and thereby take his life, and in accordance with such expectation, the said deceased did attack the defendant and the defendant then shot and killed him in pursuance of such design, then such killing would be murder." It is not questioned that the instruction states the law, but it is objected that there is no evidence in the case which justifies it. There is evidence tending to show that defendant had threatened the deceased; that on the night of the homicide he had armed himself with a pistol, and gone, in company with his brother, to the saloon of the deceased and there interfered in a game of cards; and that upon deceased protesting against his interference he had assaulted him by slapping him in the face and pulling his ear, which assault the de-

ceased did not at the time resent. That the homicide occurred about 150 feet from the saloon a short time afterward — how long afterward is not very clear from the testimony, but probably less than half an hour. There is a conflict of evidence as to the circumstances of the shooting. But the defense introduced evidence tending to show that defendant made an insulting remark to the deceased, that deceased made a reply in the same spirit and then drew a pistol and fired at defendant and defendant then shot him. This evidence tended to show that defendant sought a quarrel with the deceased, and, as he did kill him, that he sought it with the purpose of killing him. It is simply an application of the principle that a person may be held to intend the natural or probable consequences of his own acts. It is no objection that in another part of the charge the court instructed that the occurrences in the saloon should only be considered by the jury in assisting them to determine the state of feeling between the parties at the time of the shooting. Where the evidence is conflicting, it is proper to instruct upon any view of it which the jury may reasonably adopt. The last-mentioned instruction was favorable to the defendant and given upon his request, and he can not complain that the evidence might have justified the court in refusing it.

By instruction number 20 the jury were informed if at the time he was shot deceased was unarmed and made no assault upon defendant, any evidence of prior threats of deceased against defendant should not be considered. It is said that this instruction is erroneous because it ignores the principle that the defendant might act upon a reasonable apprehension of danger, even if in fact there was no actual danger, and it should subsequently appear that at the time of the shooting the deceased was unarmed. The evidence for the State tended to show that deceased was unarmed and that but two shots were fired, both by defendant. The defense was that deceased shot at defendant, and that defendant then shot deceased in his own

defense. In any view of the evidence, therefore, there is no room for the principle that a reasonable apprehension of death or great bodily harm at the hands of the deceased would excuse the defendant though there was no actual danger. It is not in the case and there was no need to state it in the instructions. But in instruction 24 the principle is fully stated as follows: "That to justify the taking of human life in self-defense, it must appear from the evidence that the defendant not only really, and in good faith, endeavored to decline any conflict with the deceased, and to escape from his assailant, if he had the opportunity so to do, if he was assailed, before he fired the shot in question, but it must also appear that the circumstances were such as to excite the fears of a reasonable person that the deceased intended to take his life, or to inflict upon him great bodily harm, and that the defendant really acted under the influence of such fears, and not in a spirit of revenge." * * *

But counsel object to this instruction upon the ground that it directs the jury to render a decision based upon their own opinion as to whether or not the defendant was in fact in actual danger of death or great bodily harm at the time he shot instead of requiring them "to determine and then to adjudge accordingly as to how a reasonable man, situated just as defendant was, would have had the right to view the question of such danger." The reason assigned for the objection would indicate some misconception of the law of the subject, or else an entire failure to read the instruction correctly. It nowhere intimates a direction to the jury to render a decision based upon their own opinion whether the defendant was in actual danger, but states with sufficient clearness that they were to judge whether the circumstances were such as to excite the fears of a reasonably prudent person; or in the language of the defendant's brief, "to determine and then adjudge accordingly as to how a reasonable man, situated just as defendant was, would have the right to view the question of such danger." As the in-

struction does not state what counsel object to and does state in apt terms what they insist it ought to state, we are justified in supposing that the objection was made under some misapprehension.

Instruction 14, objected to by the defendant, does not properly describe murder in the first degree in this State, and if the defendant had been convicted of that offense might require a reversal of the judgment. It is as follows: "The jury are instructed that while the law requires, in order to constitute murder in the first degree, that the killing should be willful, unlawful, and with premeditated malice, still it does not require that the willful intent and premeditation shall exist any particular length of time before the crime was committed; it is sufficient if there was a design and determination to kill distinctly formed in the mind of the defendant at any moment before, or at the time the shot was fired; and in this case, if the jury believe from the evidence beyond a reasonable doubt that the defendant, Ross, shot and killed the deceased as charged in the information, and that before, or at the time, the shot was fired, the defendant had formed in his mind a willful, deliberate, and premeditated design to kill the deceased, and that the shot was fired in furtherance of that design, and without any justifiable cause or legal excuse therefor, as explained in these instructions, then the jury should find the defendant guilty of murder in the first degree."

A design and determination to kill distinctly formed in the mind, *at the time the shot was fired*, is not sufficient to constitute premeditated malice, as stated in this instruction. There is a good deal of apparent conflict of authority upon the subject. But it must be borne in mind that murder in the first and second degrees are purely statutory crimes. And when the differences in the wording of the statutes are considered, we think the conflict is generally more apparent than real. In Pennsylvania, for instance, all that is required to constitute murder in the first degree is a distinctly formed intention to kill, not in self-defense

and without adequate provocation, and the true criterion of the first degree is the intent to take life. But this, under our statute, is only murder in the second degree, which must be done purposely and maliciously, that is, it must be done with the intent to kill and with malice, or else it is not even murder in the second degree. The Pennsylvania court say that the deliberation and premeditation required by their statute are not upon the intent, but upon the killing. And they distinguish the cases in other States where as they say "the terms deliberate and premeditated are applied to the malice or intent, and not to the act, and thus seem to require a purpose brooded over, formed and matured before the occasion at which it is carried into act." Keenan v. Com., 44 Pa. St., 56; Binns v. State, 66 Ind., 433, which by some oversight of counsel for the State is adduced as cited by Sackett in support of the instruction, is cited by Sackett against it and is against it, being under a statute identical with our own. Allen v. U. S., 164 U. S., 495, cited by counsel in support is against it, and the court say: "The substance of this instruction is that the intent necessary to constitute malice aforethought need not have existed for any particular length of time before the act of killing, but that it may spring up at the instant and may be inferred from the fact of killing. This is within the authorities as applied to the common law crime of murder, though where the crime is classified as in some of the States, proof of deliberate premeditation is necessary to constitute murder in the first degree." U. S. v. King, 34 Fed., 302, cited by counsel, was tried under a federal statute, which only provides for the punishment of murder without defining it or dividing it into degrees, and throws no light upon this case.

The common law crime of murder includes both murder in the first degree and murder in the second degree under our statute, and the essential of common law murder, "malice aforethought," is essential in both degrees of murder in this State. This expression came to have a

well-defined and well-understood meaning, and it is well settled that if malice existed at the time the fatal blow was struck, it constituted malice aforethought. But, by the division into degrees, as under our statute, a killing done purposely and maliciously without more (which is the common law definition of murder as the words malice aforethought are interpreted), was made murder in the second degree and not punishable by death. The common law definition of murder describes only murder in the second degree in this State. Where there is premeditation in addition to the other necessary elements of the crime, our law makes it murder in the first degree and punishable with death. In their primary meaning, no doubt, the words malice aforethought and premeditated malice are the same. But in their limited and technical sense, the words malice aforethought do not necessarily require deliberation and premeditation. The Legislature in defining the offense, entirely rejected the words, malice aforethought, and they are not used in defining either of the degrees of murder. If by premeditated malice no more was meant than is stated in this instruction, that is, "that it is sufficient if there was a design and determination to kill distinctly formed in the mind of the defendant at any moment before, *or at the time, the shot was fired,*" it is reasonable to presume they would have used the words malice aforethought, which had that well-established meaning. Having failed to do so, and having used words to define the lower degree, which are precisely equivalent in meaning to malice aforethought as construed by all the courts, the conclusion can not be avoided that they intended something more than the latter words would express. We are not, therefore, justified in dropping from the words premeditated malice the idea of premeditation and deliberation, as came to be done in construing the words malice aforethought.

The wording of our statute is the same as that of Indiana, and the supreme court of that State say: "Our statute has divided murder into two degrees. Malice and a

purpose to kill are necessary ingredients to render the killing murder in either degree; but to constitute murder in the first degree, it is requisite that there should exist not only malice and the purpose to kill, but such purpose must be premeditated, or, in the language of the statute, it must be done "purposely and with premeditated malice." It must be inferred that the Legislature intended to draw a clear and comprehensive distinction between the two degrees, and to make murder in the first degree the higher crime, involving a higher degree of malignity." Fahnestock v. State, 23 Ind., 262. And again, in the same case, "The principle involved by which murder in the first degree is distinguished from murder in the second degree, is this: In the former, premeditated malice requires that there should be time and opportunity for deliberate thought; and that after the mind conceives the thought of taking the life, the conception is meditated upon, and a deliberate determination formed to do the act; that being done, then no difference how soon afterward the fatal resolve is carried into execution, it is murder in the first degree. While in murder in the second degree, the purpose or intention to kill is followed immediately by the act, it is not premeditated; the time and circumstances are not such as to allow of deliberate thought; yet to make it murder, even in the second degree, there must be a formed design and purpose to kill."

The principle stated in the instruction would, in our opinion, abolish all intelligent distinction between murder in the first degree and murder in the second degree. It is true that in other parts of the same instruction the principle seems to be accurately stated, but this only serves to make the whole instruction obscure and contradictory.

But the defendant was found guilty of murder in the second degree and the error was harmless in this case. As stated in Thompson on Trials, Sec. 2401, it is the rule of nearly all the courts that no judgment will be reversed on account of the giving of erroneous instructions, unless it appears probable that the jury were misled by

them.   Some of the courts have refused to apply the rule in criminal cases, but it was approved by this court in Miller v. State, 3 Wyo., 663, where the defendant was convicted of murder in the first degree.   In a case like the present where the jury did not follow the misdirection but disregarded it and returned a verdict for the lower degree, we think that it affirmatively appears that the defendant was not prejudiced.   There can be no possible propriety in remanding a case for correct instructions upon a crime of which the defendant has been acquitted, unless the verdict which was returned was in some way affected by the misdirection, and there is no suggestion that it was in this case.   But we have deemed some discussion of the subject to be proper, in view of the apparently conflicting decisions, as it may perhaps be of some assistance in future trials.

Objection is made to the language employed in instruction 28.   The form of expression used is "the court instructs the jury if they find from the evidence," and objection is made that it does not direct the jury that they must be satisfied *beyond a reasonable doubt* before finding against the defendant upon the propositions presented in this instruction.   The jury were fully and correctly informed of the degree of proof and weight of evidence required in other parts of the charge.   This instruction was not directed to that question.   It contains no intimation that a mere belief, not excluding every reasonable doubt, is sufficient upon which to base a finding.   But, the court having instructed them that the charge was to be considered as a whole, when they are directed that if they find certain facts the law exacts a particular verdict, the reasonable construction is that they are to find upon the principles set out in the charge for their guidance in that particular.   We do not think the failure of the court to repeat the caution as to reasonable doubt was error, and we can not perceive that it would tend to mislead the jury.

There are other objections to the charge based upon the wording, which counsel contend had a tendency to mis-

lead the jury and prejudice the defendant, under the facts of the case. We have examined them with a great deal of care and do not think these objections are sustained. With the exception we have noted, we think the charge states the law as applied to the evidence.

This case was tried in Weston, one of the counties of the fourth district. The record shows that the judge of that district presided at the convening of the court on the day the trial began, but that the trial was presided over throughout by the judge of the third district, he having been requested to do so by an order of court entered in the journal. Under these facts, it is insisted by the defendant that the trial was illegal. The precise reason upon which the objection is based is not very clear, but counsel in their brief say, "this rests upon the wording of the statute which would seem to preclude the possibility of two courts being holden in the same county at one time." Counsel do not favor us by pointing out what statute is referred to. We think it is very probably true that two courts, or two terms of the district court, could not legally be in session in the same county at the same time. But we perceive no reason why different judges may not transact separate parts of the business of the same term. There is nothing in the record to show that the judge of that district was disposing of other business of the term while this trial was in progress. Though there would seem to be no obstacle in the way of his doing so, other than some inconvenience that might arise in obtaining juries under the statute in cases where juries might be required. Section 11, article 5 of the constitution provides, "the judges of the district courts may hold courts for each other, and shall do so when required by law;" and Section 2, Chap. 52, Laws 1890–91, provides that when any judge is unable to try any cause, or to hold any term, or portion of a term of court in his district, he shall call upon one of the other judges to try such cause or to hold such term or portion of a term, and gives such other judge full power and authority to act. It appears

from the recitals of the bill of exceptions that the case was heard at the special June term, 1897, of the district court of Weston County, and the transcript is certified by the clerk of that court under his official seal. There is no suggestion anywhere in the record that there was held, or any attempt to hold, another court, or another term of the district court in that county at that time. There is no reason whatever upon which this assignment of error can rest. There were formerly some doubts whether the district court could legally be in session in two counties of the same district at the same time, which may have led to some confusion in the minds of counsel. But that question was finally disposed of in a very able discussion of the subject by Chief Justice Groesbeck in Stirling v. Wagner, 4 Wyo., 11.

The defendant was sentenced by the judge, who presided at the trial, to the penitentiary for life. There was a stay of execution pending an appeal to this court, and at the next September term of the district court the sentence was ordered to be carried into execution. It is objected that Judge Stotts, the judge of that district, having acted as prosecuting attorney in the earlier stages of the case, was without jurisdiction to make this order. It does not appear from the record, that Judge Stotts made the order. But if he did, he was the judge of that district, the order was purely formal, and he had the jurisdiction unless he had in some way been deprived of it. By Sections 3404–5, Rev. Stat., the defendant in a criminal action may make affidavit that he believes he can not receive a fair trial owing to the bias or prejudice of the judge, and it then becomes the duty of such judge to call some other who shall try or continue the cause as if it had been originally brought before him. Even if this proceeding would deprive the judge of jurisdiction to make a formal order in the case, it does not affect this matter. No affidavit was made and the judge seems to have called another upon his own motion, and while conditions often arise which would make a judge reluctant to sit in the

trial of a criminal cause, we know of no other provision of the statutes which could be held to deprive him of jurisdiction, and counsel do not point out any.     But if he had been without jurisdiction, it would not be ground for reversal of the judgment.     But such want of jurisdiction could only affect the order by which the defendant was directed to be conveyed to the penitentiary, and the only result would be that his incarceration there would be technically illegal, until a valid order could be entered by some judge having authority to make it.

It is further contended that the verdict is not sustained by the evidence.     It was claimed by the defendant that the shooting was in self-defense, and that deceased fired the first shot.     All the witnesses who saw or heard the shooting, testify that only two shots were fired.     The testimony, with the exception of that of the three witnesses, Rice, Fuller, and Ross, tends to show that the deceased was unarmed at the time.     Rice, Fuller, and Ross state that deceased fired the first shot, but, like the others, say only two shots were fired.     Two witnesses state that the defendant told them after the shooting that he fired two shots, and exhibited the pistol, there being three loaded shells, two empty shells, and one empty chamber.     The defendant did not testify, and the statement of these two witnesses is not denied, although they testify that George Ross, the brother of the defendant, and his brother-in-law, Graham, were present when he made the statement.     It was a deliberate statement, for he called attention to the condition of the pistol in proof of its correctness.     The deceased, in reply to the question whether he fired a shot, stated repeatedly that he had no gun.     It is true that two shots may be so nearly simultaneous as to make but one report.     But this fact is not available for the defendant upon the theory of the defense that the deceased shot first.     For in that case there would necessarily be three distinguishable reports.     From this evidence the jury were justified in believing that there were but two shots, and that both were fired by

defendant.    They had  the witnesses before them, and it
was for them to pass upon their credibility.

The  verdict  ought  not  to be  disturbed, and  the judg-
ment will be affirmed.

*Affirmed.*

POTTER, C. J., and SCOTT, DISTRICT JUDGE, concur.

KNIGHT, J., having presided at the trial  below, did not
sit.