Donald Arthur HARLEY, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 86-101.

Supreme Court of Wyoming.

May 29, 1987.

Leonard D. Munker, State Public Defender, and Julie D. Naylor, Appellate Counsel, Wyoming Public Defender Program, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Judith A. Patton, Asst. Atty. Gen., for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

THOMAS, Justice.

The main issue addressed in this appeal is whether, in a criminal case in which the charge is possession of stolen property, an instruction that the jury may infer guilty knowledge from the unexplained possession of recently stolen property transgresses constitutional standards. The argument on this issue invites the court to revisit an area of substantive law which it has resolved previously. We conclude that the previous resolution is correct, and the district court did not err in giving the instruction which is challenged. A second question is presented relating to entitlement to credit for pre-sentence confinement against the maximum sentence imposed. In this regard, we hold that credit should have been given. We affirm the judgment and sentence, but the sentence must be modified so that Harley is given credit for 117 days of pre-sentence confinement to be deducted from the maximum sentence imposed by the district court.

Harley's statement of the issues in this case is:

"Whether Instruction Number 5 violated appellant's right to due process of law.

"Whether the trial court abused its discretion in refusing to give credit against appellant's sentence for time served in presentence confinement."

The State of Wyoming presents the issues as:

"1. Did the trial court err in giving Jury Instruction No. 5 which permits the inference of guilty knowledge from recent unexplained possession of stolen property.

"2. Did the sentencing judge err in granting credit for time served prior to sentencing by deducting the time served from the minimum rather than the maximum sentence imposed."

The material facts gleaned from the record in this case may be briefly stated. In November of 1985, Donald Harley removed a set of Wyoming license plates from a vehicle which he owned but which had been inoperable for three years. He took these license plates with him to Denver, where he contacted the owner of a 1976 GMC "Jimmy" vehicle. Harley examined the truck and asked permission to take it for a test drive. The owner agreed provided he could accompany Harley on the test drive. Harley then expressed a desire to have a mechanic at a local K–Mart complex inspect the vehicle for mechanical defects. While the vehicle was being inspected, Harley and the owner had a cup of coffee in the K–Mart store and discussed the details of a possible sale. During this conversation, Harley, who at that time had the keys to the vehicle, excused himself to go to the restroom. He was gone long enough that the owner became concerned and went to the garage area of the K–Mart to see if the vehicle was still there. It was, so he returned to the table where Harley soon rejoined him. A machine for duplicating keys was available at the K–Mart complex. Upon completion of the inspection and the furnishing of an opinion by the mechanic, Harley advised the owner that he was interested in purchasing the vehicle, but he wanted his wife to look at it the next day. The owner agreed to that and furnished Harley with a map showing the location of the owner's parents' house where the vehicle would be parked.

The following morning, the owner's family discovered that their fence was broken down and there were tire tracks leading away from the place where the 1976 GMC "Jimmy" vehicle had been parked. The owner reported the vehicle as stolen and took the trouble to confirm the availability of a duplicate key machine at the K–Mart. During the night, Harley had driven the vehicle into Wyoming, apparently intending to go to Manila, Utah. Some 35 miles from

Rock Springs, Wyoming, the vehicle "blew an engine," and it could no longer be driven. Harley arranged with a tow truck operator, to whom Harley was known, to have the truck towed to a ranch in Manila, Utah, some 75 miles away. The sheriff's office in Utah was made aware of the towing, and, suspecting the possibility of a stolen vehicle, it conducted a license plate check to ascertain any improprieties. That check disclosed that the license plates were registered in Harley's name but were assigned to a 1976 blue pickup truck. A search warrant then was obtained to search the ranch where the 1976 GMC "Jimmy" had been towed, and it was discovered in the doorway of a barn partially covered with a tarp. The license plates issued for Harley's truck still were attached.

When Harley testified at trial, he attempted to explain all of the incriminating evidence. He told the jury that he had accompanied a Mexican alien friend of his, named Manuel, to Denver. He knew that Manuel was an illegal alien, and he understood that Manuel desired to purchase a vehicle. In order to help Manuel avoid any brushes with law enforcement officials, he took the license plates in case they were needed to help Manuel get any vehicle he might purchase back to Wyoming. He even explained that Manuel had a friend who was a locksmith. He first became involved with the 1976 GMC "Jimmy" when Manuel appeared in the early hours of the morning and suggested that they return to Wyoming. Harley then explained that he still was simply assisting Manuel when the engine on the truck blew, and he arranged to have it taken to Manila, Utah.

Against this factual background, Harley complains that Instruction No. 5 which was given to the jury violated his right to due process of law under Art. 1, § 6 of the Wyoming Constitution and the Fourteenth Amendment to the United States Constitution. Instruction No. 5 reads:

"Possession of recently stolen property is not of itself sufficient to permit a finding that the Defendant is guilty of the crime charged. However, possession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which the Jury may reasonably draw the inference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen, and, is also a circumstance from which the jury may reasonably draw the inference that the person in possession not only knew it was stolen property, but also participated in some way in the theft of the property.

"Although possession is a strong circumstance tending to show guilt, there must be corroborative evidence tending to prove Defendant's guilt. However, this corroborative evidence need only be slight. As corroboration, you may consider whether the Defendant had the opportunity to commit the crime charged, his conduct, his false or contradicting statements, if any, or other statements he may have made with reference to the property and any other evidence which tends to connect him with the crime.

"If you find beyond a reasonable doubt from the evidence that the property was stolen, and that, while recently stolen, the property was in the possession of the Defendant, you may, from those facts, draw the inference not only that the property was possessed by the Defendant with knowledge that it was stolen, but also that Defendant participated in some way in the theft, unless such possession by the Defendant is explained to the satisfaction of the Jury by other facts and circumstances in evidence of the case."

Relying upon *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) and *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), Harley contends that the effect of this instruction was to shift the burden of proof to him because it required him to come forward with an explanation satisfactory to the jury once the predicate facts were established and that the instruction can be interpreted so that it required him to raise more than a reasonable doubt as to every element of the crime. He contends

that the instruction is impermissible on its face, and he distinguishes *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); and the cases on which it relied, *Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610, reh. denied 397 U.S. 958, 90 S.Ct. 939, 25 L.Ed.2d 144 (1970); *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); *United States v. Romano,* 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); and *United States v. Gainey,* 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965).

The concept established in *Sandstrom v. Montana,* supra, which is explained in *Francis v. Franklin,* supra, is not novel or unique in Wyoming jurisprudence. In *Krucheck v. State, Wyo.,* 671 P.2d 1222 (1983), aff'd on appeal after remand 702 P.2d 1267 (1985), *Sandstrom v. Montana,* supra, was relied upon in part by this court in reversing a criminal conviction because the trial judge gave a mandatory inference instruction. In addition to holding that the mandatory inference violated due process, we also pointed out that the court had failed to comply with Rule 303(c), W.R.E. In *Saldana v. State, Wyo.,* 685 P.2d 20 (1984) cert. denied 471 U.S. 1103, 105 S.Ct. 2331, 85 L.Ed.2d 848 (1985); *Eckert v. State, Wyo.,* 680 P.2d 478 (1984); and *Evans v. State, Wyo.,* 655 P.2d 1214 (1982), we distinguished *Sandstrom v. Montana,* supra, and upheld the use of permissive inference instructions. In *Eckert v. State,* supra, an inference instruction similar to the one given in this case was found to be lawful because it presented a permissive presumption in accordance with *County Court of Ulster County, New York v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).[1]

■ Evidentiary presumptions are unconstitutional if they "have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." *Francis v. Franklin,* supra, 105 S.Ct. at 1970; *Sandstrom v. Montana,* supra; *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Brooks v. State, Wyo.,* 706 P.2d 664 (1985); *Krucheck v. State,* supra. Conversely, permissive inferences meet constitutional mandates so long as the connection between the inferred fact and the proven fact is one that reason and common sense justify in the light of the facts in a particular case. *Francis v. Franklin,* supra.

■ When an instruction incorporating a presumption is subjected to a constitutional challenge, we first must determine the nature of the presumption in accordance with *Francis v. Franklin,* supra. In that case, the United States Supreme Court distinguished mandatory presumptions, which tell the jury that it must infer presumed facts if the state establishes predicate facts, from permissive presumptions, which advise the jury that a possible conclusion may be drawn if the state establishes predicate facts, but the jury is not required to draw the inference. The Supreme Court of the United States then continued by categorizing mandatory presumptions as either irrebuttable or conclusive or rebuttable. An irrebuttable or conclusive presumption relieves the state of its burden of persuasion because the element which is presumed is removed from the case entirely once the state establishes the predicate facts. A mandatory rebuttable presumption does not remove the presumed element from the case once the predicate facts are established, but it still is unconstitutional because it relieves the state of the affirmative burden of persuasion on every element of the offense. This effect is accomplished by advising the jury that it *must* find the presumed element unless the defendant persuades the jury not to make that finding. The unconstitutionality of either an irrebuttable mandatory presumption or a mandatory rebuttable presumption attaches to the fact that the state is relieved of establishing an element of the offense beyond a reasonable doubt.

■ In analyzing the instruction to determine its nature, the court should determine how the instruction on the inference would be understood by a reasonable juror.

---

1. In addition *Sandstrom v. Montana,* supra, was cited but not applied with respect to an instruction on a presumption of mental responsibility in *Brooks v. State, Wyo.,* 706 P.2d 664 (1985).

*Francis v. Franklin,* supra. The verb which is used, "may" or "shall" or "must," is afforded a high degree of significance in applying this test. In this instance, the challenged instruction advised the jury of an inference of knowledge or participation "which the jury *may* reasonably draw" provided that corroborative evidence is present even though the corroborative evidence need only be slight. The instruction listed circumstances which could be considered as corroborative including opportunity, the conduct of the defendant, any false or contradictory statements he made, other statements he might have made with reference to the property and any other evidence connecting him to the crime. Finally, the instruction again used the verb "may" to advise the jury that the inference to be drawn, if the predicate fact of possession of property that was recently stolen was established beyond a reasonable doubt, was rebuttable either by a satisfactory explanation by the defendant or by other facts and circumstances. In another instruction given at the same time, the jury was advised that the state must establish all of the elements beyond a reasonable doubt.

▮ The inference encompassed by this instruction was one that a reasonable juror would conclude to be permissive in the context of the instructions as a whole. See *Francis v. Franklin,* supra; *Ostrowski v. State,* Wyo., 665 P.2d 471 (1983); *Scheikofsky v. State,* Wyo., 636 P.2d 1107 (1981); *Snyder v. State,* 599 P.2d 1338 (1979). This instruction also met the requirements of Rule 303(c), W.R.E. If the provisions of Rule 303(c), W.R.E., are complied with in giving a jury an instruction with respect to an inference, the constitutional problem of relieving the state of its burden of proof or shifting that burden to the defendant is avoided. There still remains to be considered the logic of the inference.

[5, 6] Once it is concluded that an inference is permissive, a second inquiry must be pursued with respect to whether the inference to be drawn from the predicate facts is a rational one, or to paraphrase *Francis v. Franklin,* supra, the conclusion

is one common sense justifies in light of the established facts of the case. Harley attempted to argue only the facial invalidity of the instruction on the inference. He did not assume the burden of challenging the use of the permissive presumption by demonstrating its invalidity as applied to him. This follows from his efforts to distinguish *Barnes v. United States,* supra, and the cases discussed in the court's opinion. Unlike the challenge to a mandatory or conclusive presumption, if the presumption or inference is permissive only, then it must be demonstrated that it was invalid in the particular case.

"* * * Because [a] permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination." *County Court of Ulster County, New York v. Allen,* supra, 442 U.S. at 157, 99 S.Ct. at 2225; see also, *Francis v. Franklin,* supra.

The established facts in this case demonstrate the common sense justification of the inference. Consequently, it did not infringe upon Harley's right to due process of law and a fair trial.

The presumption of guilty knowledge which may be drawn from the unexplained possession of stolen goods is one which is "deeply rooted in our law." *Barnes v. United States,* supra, 412 U.S. at 843, 93 S.Ct. at 2362. In *Russell v. State,* Wyo., 583 P.2d 690 (1978), we approved the use of an instruction similar to that given by the trial court in this case. In that case, we held that the invocation of such an inference satisfied a challenge to the sufficiency of the evidence and that it also, pursuant to *Barnes v. United States,* su-

pra, was sufficient in the context of the reasonable doubt standard.

 In his second claim of error, Harley challenges the failure of the district court to give him credit for pre-sentence confinement with respect to the maximum sentence. In the absence of a statute, our rule is that the determination of whether to grant or deny credit for pre-sentence confinement is within the discretion of the trial court if:

"* * * (1) [T]he presentence custody is not due to the defendant's indigency; and (2) the sum of the time spent in presentence custody plus the sentence does not exceed the maximum allowable sentence." *Jones v. State*, Wyo., 602 P.2d 378, 381 (1979).

See also *Munden v. State, Wyo.*, 698 P.2d 621 (1985); *Hedge v. State, Wyo.*, 696 P.2d 51 (1985). If the pre-sentence custody was attributable to indigency and the maximum sentence plus the pre-sentence confinement exceeds the maximum statutory sentence, we have held the sentence to be illegal and either mandated correction or remanded the case to the district court for correction. *Munden v. State*, supra; *Pote v. State, Wyo.*, 695 P.2d 617 (1985); *Heier v. State, Wyo.*, 727 P.2d 707 (1986). The State urges that credit in fact was given for pre-sentence confinement when it was given against the minimum sentence. It is clear from *Heier v. State*, supra, and *Hedge v. State*, supra, that the credit must be applied to the maximum sentence imposed. If the maximum sentence plus the pre-sentence confinement time exceeds the statutory maximum sentence, it is illegal, *Heier v. State*, supra, and it is simply discretionary with the trial court whether it also wishes to credit pre-sentence confinement on the minimum sentence.

The State also urges that Harley was not indigent, but under our test, indigency is premised on the inability of the defendant to post bond. *Hedge v. State*, supra; *Jones v. State*, supra. At his arraignment, the following dialogue between the court and Harley occurred:

"THE COURT: * * * Mr. Harley, your bail is set at five thousand dollars, re-duced to five thousand dollars. You haven't been able to raise that amount?
"MR. HARLEY: No, your honor.
"THE COURT: You're not going to be able to either, I suppose?
"MR. HARLEY: No, your honor."

 It is our conclusion that Harley was confined prior to trial because he was unable to post bond due to his indigency. The pre-sentence confinement added to the maximum sentence exceeds the statutory maximum by the 117 days that he was confined prior to the imposition of sentence. The sentence was illegal, and Harley is entitled to credit for 117 days against the maximum sentence of 10 years imposed by the trial court. See *Heier v. State*, supra; *Hedge v. State*, supra.

We affirm the verdict of guilty and the judgment and sentence of the court as corrected by our mandate that Harley be given credit of 117 days against his maximum sentence.