Thomas MERCHANT, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 98–157.

Supreme Court of Wyoming.

April 4, 2000.

Representing Appellant: Sylvia L. Hackl, State Public Defender; Kenneth M. Koski, Deputy Public Defender; and Donna D. Domonkos, Appellate Counsel.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; and D. Michael Pauling, Senior Assistant Attorney General.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

THOMAS, Justice.

The primary effort of Thomas Merchant (Merchant) in this case is to have all charges against him dismissed because of a claimed violation of the anti-shuttling provision of the Agreement on Detainers. In addition, he claims as error the giving of an instruction which, he argues, had the effect of structuring a mandatory presumption for the jury with respect to the intent that certain checks charged as fraudulent would not be paid. Merchant also contends that his motion for judgment of acquittal should have been granted as to certain counts because the evidence did not satisfy the element of intent to deprive an owner of property; the payment of a pre-existing debt by an insufficient funds check did not constitute an offense under the law; and venue and jurisdiction were improperly charged in Laramie County on two checks that were delivered in Platte County. As a final claim of error, Merchant charges vindictive prosecution with respect to the refiling of certain charges. This Court is satisfied that no violation of the Agreement on Detainers occurred in these circumstances; the instruction did not advise the jury of a mandatory presumption; the district court did not err in denying the motion for judgment of acquittal on the charges addressed by the motion; and there is no basis for concluding that the refiling of the charges by the State constituted vindictive prosecution. The Judgment and Sentence of the Court, entered in the district court, is affirmed in every respect.

The issues articulated in the Brief of Appellant, filed on behalf of Merchant, are:

*ISSUE I*

Whether the State's violation of Article IV(e) of the Interstate Agreement on Detainers Act must result in a dismissal with prejudice of the Wyoming charges?

*ISSUE II*

Whether the district court erred by giving Instruction 4E, which stated in essence that there was a presumption of intent to defraud by committing certain acts and which assumed as true the existence or nonexistence of a material fact?

*ISSUE III*

Whether the district court erred in denying appellant's motion for judgment of acquittal as to Counts IV, VI, VII, and X?

   1. COUNT IV & COUNT VII: Whether the *mens rea* element of larceny (the intent to deprive) was satisfied by an intent temporarily to use property without the owner's permission, or even an intent to appropriate outright the benefits of the property's short-term use?

   2. COUNT VI: Whether payment of a preexisting debt by an insufficient funds check where nothing was gained, and no change in the relationship between the parties occurred, negated any intent to defraud?

   3. COUNT X: Whether venue and jurisdiction were proper in Laramie County, Wyoming on a criminal offense when the insufficient funds checks were issued in Platte County, Wyoming?

*ISSUE IV*

Whether appellant's constitutional rights to due process were violated by the prosecutor's vindictive filing of Docket Number 24–150 immediately after appellant exercised his right to a preliminary hearing and successfully obtained a dismissal of that charge?

This Statement of the Issues is found in the Brief of Appellee, filed by the State of Wyoming:

   I. Did the State violate the Interstate Agreement on Detainers?

   II. Did the district court err in giving Instruction 4E?

   III. Did the district court improperly deny appellant's motion for judgment of acquittal as to Counts IV, VI, VII and X?

   IV. Did the filing of charges in Case No. 24–150 constitute vindictive prosecution in violation of appellant's right to due process?

This Statement of the Issues is found in the Reply Brief of Appellant:

*ISSUE I*

Whether the State's violation of the anti-shuttling provision of the Interstate Agreement on Detainers Act must result in a dismissal with prejudice of the Wyoming charges?

*ISSUE II*

Whether the district court erred by giving Instruction 4E, which stated in essence that there was a presumption of intent to defraud by committing certain acts and which assumed as true the existence or nonexistence of a material fact?

   1. Whether instructing the jury that it may disregard evidence that appellant lacked intent to defraud is plain error?

We summarize the historical and procedural facts of this case to serve as background for a discussion of the particular facts in connection with the resolution of the issues asserted by Merchant. Merchant commenced doing business as a dealer in and consignment agent for used motor vehicles. The charges on which Merchant was convicted all related to events that occurred in connection with his business activities.

On December 19, 1994 a two-count information was filed in which Merchant was charged with larceny by a bailee and check fraud. The first count was based upon a consignment sale after which Merchant refused to turn over to the owner any proceeds of the consignment sale. The second count charged in this information was an "insufficient funds" check for $5,452.27, which was written and signed (stamp signature) by Merchant. The check was made out to a Cheyenne service station and automobile repair business. After a number of notifications from the issuing bank, Merchant still refused to pay the check. On January 4, 1995, the State amended the information against Merchant by adding two more counts of issuing "insufficient funds" checks. The first additional count included two checks written to an automobile dealer in Wheatland that totaled $13,200.00. The second count related to a check written to RS for $1,050.00.

Then, on January 10, 1995, the State filed a new information charging Merchant with one count of larceny by a bailee and two counts of obtaining property by false pretenses. The larceny count involved Merchant's sale of a truck to DJ and his subsequent failure to provide DJ with the title to

the truck. The truck had been used as collateral for "floor plan" financing of vehicles that Merchant had purchased for resale, and the title had been delivered to the lender. The first count of obtaining property by false pretenses arose out of Merchant's purchase of another truck. In that instance, Merchant failed to pay off the loan on the truck, and when Merchant sold the truck he was unable to deliver the title to the purchaser. The third count, another count of obtaining property by false pretenses, charged Merchant with purchasing a truck with a check that was returned for "insufficient funds." Merchant again was not able to provide the title to the truck to the purchaser, upon the subsequent sale of the truck.

On February 2, 1995, a third information was filed charging Merchant with four counts of making false statements to obtain credit, but those charges were dismissed. On February 27, 1995, a fourth information was filed charging Merchant with presenting false information to obtain two loans. The first count related that Merchant supplied a false date of birth, a false Social Security number, false documents relating to his place of employment, and false information relating to his income in obtaining a loan totaling $23,-353.92. The second count charged that Merchant used similar false information to obtain a loan in the amount of $6,900.09.

On October 24, 1996, the fifth information was filed charging Merchant with one count of obtaining property by false pretenses and two counts of check fraud. The first count charged Merchant with obtaining a truck with an "insufficient funds" check, and selling the truck to some unsuspecting customers from whom he again withheld the title. The second count related to a check written by Merchant to LG for $1,000.00, which was knowingly drawn on an account that Merchant knew had insufficient funds. The third count charged the issuance of nine "insufficient funds" checks totaling $627.01, which were written in December of 1994. On July 7, 1997, the State filed another amended information which dropped the third count of the Information filed on October 24, 1996.

Merchant proceeded to trial on eleven counts, and the jury returned a guilty verdict on all counts. A Motion for Judgment of Acquittal After Discharge of Jury then was filed, and the district court granted that motion as to one of the counts. Merchant was sentenced to three consecutive sentences of not less than six (6) nor more than nine (9) years, with sentences on two or three of the other counts to be served concurrently with each of the consecutive sentences. Merchant appeals from the Judgment and Sentence of the Court.

In his first claim of error, Merchant contends that the Agreement on Detainers, Wyo. Stat. Ann. §§ 7–15–101—7–15–105 (Lexis 1999), was violated by the State. This argument is based upon the fact that after he was brought to Wyoming for trial on the charges against him, he was returned to Weld County, Colorado, so that charges pending against him there could be resolved. Merchant contends that the Agreement on Detainers specifically provides for dismissal, with prejudice, of the charges against him under the circumstances. The State argues that a correct application of the Agreement on Detainers demonstrates that there was no violation of its provisions.

Merchant was serving a sentence in the Colorado Territorial Correctional Facility located in Canon City, Colorado, when he was returned to Wyoming in October of 1996 to stand trial on the charges pending against him in Wyoming. Under the Agreement on Detainers, Colorado was designated as the "sending state," and Wyoming was designated as the "receiving state." Prior to being tried in Wyoming, Merchant was returned to Colorado on two occasions. He was not returned to Canon City, his original place of imprisonment, but on both occasions he was returned to Weld County, Colorado. The first date of return was on November 27, 1996, and he was held in custody by Weld County officials until his return to Wyoming on December 3, 1996. Wyoming returned Merchant to Weld County officials again on February 20, 1997, and he was returned to Wyoming on February 24, 1997. He remained in Wyoming until the trial on the Wyoming charges.

Article I of the Agreement on Detainers states as the purpose and policy for its adoption:

> The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trials of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints. The party states also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures.

Wyo. Stat. Ann. § 7–15–101.

Merchant argues that the anti-shuttling provision found in Article IV(e) of the Agreement on Detainers was violated when Merchant was transferred to Weld County, Colorado, prior to being tried on the Wyoming charges against him. It follows, he insists, that all charges against him must be dismissed with prejudice. Merchant's argument, however, reflects either a misunderstanding or a misreading of the Agreement on Detainers.

The State is correct when it asserts that this is not a case within Article IV(e), but rather a case within Article III of the Agreement on Detainers. Article III provides, in pertinent part:

> (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial at the next term of court after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

Wyo. Stat. Ann. § 7–15–101. The difference between Article IV and Article III is that Article IV provides for a request for the production of a prisoner by another state where charges are pending, while under Article III, provision is made for a request by a prisoner for disposition of pending charges in another state.

Merchant's own exhibits demonstrate that it was he who requested a final disposition of the Wyoming charges. No request was made by the State of Wyoming or the State of Colorado. Under these circumstances, we afford credence to the argument of the State that the remedy for a violation of Article III is found in Article III(d) of the Agreement on Detainers, which provides, in pertinent part:

> If trial is not had on any indictment, information or complaint contemplated hereby *prior to the return of the prisoner to the original place of imprisonment*, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Wyo. Stat. Ann. § 7–15–101 (emphasis added). This language must be compared with the language of Article IV(e) and Article V(e) of the Agreement on Detainers:

> (e) If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being *returned to the original place of imprisonment pursuant to Article V(e)* hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Wyo. Stat. Ann. § 7–15–101, Article IV (emphasis added).

> (e) At the earliest practicable time consonant with the purpose of this agreement, the prisoner shall be returned to the sending state.

Wyo. Stat. Ann. § 7–15–101, Article V. The State correctly points out that the meaning of the "original place of imprisonment" in Article III is different from that found in Article IV.

■ Merchant never was returned to his "original place of imprisonment," the correctional facility at Canon City, Colorado. He was returned to Weld County, Colorado, to facilitate the resolution of charges in Weld County while waiting for the Wyoming courts to schedule his trial on the Wyoming charges. Absent modifying language in Article III, similar to that in Article IV, Article III's definition of "original place of imprisonment" is more precise and restrictive than that of Article IV. Article III requires that the prisoner be returned to his "original place of imprisonment," the Colorado Territorial Correction Facility in Canon City, Colorado, while under Article IV, it appears to suffice if the prisoner is returned to the sending state.

The purposes and policies of the Agreement on Detainers were supported and implemented by what occurred in this case. Wyoming, by allowing the return of Merchant to Weld County, Colorado, before his trial in Wyoming, facilitated an expeditious resolution of the charges against Merchant in Weld County, Colorado. If Wyoming had waited until after the disposition of the charges in Wyoming was completed, Merchant would have waited longer to start his "prisoner treatment and rehabilitation." It would not make sense to require Merchant to sit in a Wyoming jail awaiting his trail in Wyoming when he could be participating in disposing of charges against him in Colorado. *United States v. Taylor,* 861 F.2d 316, 319 (1st Cir.1988); *People v. Dye,* 69 Ill.2d 298, 13 Ill.Dec. 695, 371 N.E.2d 630, 632 (1977).

We hold that the Agreement on Detainers was not offended by the State of Wyoming in Merchant's case. The purposes and policies behind the Agreement on Detainers actually were supported and facilitated by the temporary transfers from Wyoming to Weld County, Colorado. Merchant, if anything, was aided, not injured, and the relief of dismissal he seeks must be denied.

In presenting his second issue, Merchant argues that the district court erred in giving Instruction No. 4E to the jury. He contends that the effect of the instruction was to give a mandatory presumption to the jury in violation of his constitutional rights to due process. The instruction reads:

> In deciding whether a check was issued with intent to defraud, you *may* rely upon those factors listed under (A), (B), or (C) to determine whether Thomas Merchant intended that such checks should not be paid:
>
> (A) That at the time of issuance he did not have an account with the drawee (bank);
>
> (B) That at the time of the issuance he did not have sufficient funds with the bank upon which such funds were to be drawn and that he failed to pay the check within 5 days after receiving notice of non-payment or dishonor personally given or sent to the address shown on the check
>
> (C) That when presentment was made in a reasonable time the issuer did not have sufficient funds with the drawee (bank) and he failed to pay the check within 5 days after receiving notice of non-payment or dishonor personally given or sent to the address on the check.

(Emphasis added.) The State argues that the instruction was appropriate and did not state a mandatory presumption as Merchant argues. Recently, a substantially similar instruction was approved by this Court in *Huff v. State,* 992 P.2d 1071, 1074–75 (Wyo.1999).

■ In *Harley v. State,* 737 P.2d 750, 754 (Wyo.1987), this Court undertook a comprehensive analysis of the invocation of presumptions in criminal cases. We opened that discussion by saying:

> Evidentiary presumptions are unconstitutional if they "have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential

element of a crime." *Francis v. Franklin* [*Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) ], supra, 105 S.Ct. at 1970; *Sandstrom v. Montana* [*Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) ], supra; *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Brooks v. State,* Wyo., 706 P.2d 664 (1985); *Krucheck v. State* [*Krucheck v. State,* 671 P.2d 1222 (Wyo.1983) ], supra. Conversely, permissive inferences meet constitutional mandates so long as the connection between the inferred fact and the proven fact is one that reason and common sense justify in the light of the facts in a particular case. *Francis v. Franklin,* supra.

We adopted the classification by the United States Supreme Court in *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) of "mandatory presumptions, which tell the jury that it must infer presumed facts if the state establishes predicate facts," and "permissive presumptions, which advise the jury that a possible conclusion may be drawn if the state establishes predicate facts, but the jury is not required to draw the inference." *Harley,* 737 P.2d at 754. We also recognized the classification of mandatory presumptions as "either irrebuttable or conclusive or rebuttable," noting that both are unconstitutional. *Harley,* 737 P.2d at 754. The irrebuttable or conclusive mandatory presumption transgresses constitutional requirements because it removes an element of the offense from the consideration of the jury. The rebuttable mandatory presumption falls afoul of constitutional principles not because it removes an element from the consideration by the jury, but because of its effect of relieving the State of the burden of persuasion as to the element to which it attaches. We then adopted this test for determining the nature of the instruction:

In analyzing the instruction to determine its nature, the court should determine how the instruction on the inference would be understood by a reasonable juror. *Francis v. Franklin,* supra. The verb which is used, "may" or "shall" or

"must," is afforded a high degree of significance in applying this test.

*Harley,* 737 P.2d at 754–55.

We review jury instructions as a whole without singling out individual instructions or parts of instructions. *Vigil v. State,* 859 P.2d 659, 663 (Wyo.1993); *Collins v. State,* 854 P.2d 688, 700 (Wyo.1993). This rule has persisted for a full one hundred years. *Streitmatter v. State,* 981 P.2d 921, 925 (Wyo.1999); *Ross v. State,* 8 Wyo. 351, 57 P. 924, 930 (1899). We give the trial courts great latitude in instructing the jury. We "will not find reversible error in the jury instructions as long as the instructions correctly state the law and the entire set of instructions sufficiently covers the issues which were presented at the trial." *Harris v. State,* 933 P.2d 1114, 1126 (Wyo.1997). Whether or not the trial court has met its obligations to properly instruct the jury, we view the instructions in their totality and read them as a whole. *Baier v. State,* 891 P.2d 754, 756 (Wyo.1995).

Merchant did object to the proposed instruction during the instruction conference claiming that it stated a mandatory presumption of intent to defraud. However, the district court overruled Merchant's objection and gave Instruction 4E to the jury. Instruction 4E does not expressly instruct the jury to apply a mandatory presumption nor does it command the jury to find the intent to defraud as Merchant would have us believe. The instruction expressly states that the following factors may be relied upon to determine whether or not Merchant did in fact have the requisite intent to defraud. When read with all of the instructions together, Instruction 4E only invites a permissive inference.

In his third claim of error, Merchant complains of error because the district court denied his motion for judgment of acquittal as to four counts of the charges against him. Two of those counts charged larceny, and Merchant contends that the element of intent to deprive the owner was not satisfied because the evidence demonstrated only an intent to use the property temporarily. Merchant contends that the evidence was inadequate on one of the insufficient check

charges because it was given for payment of a pre-existing debt, and since the status quo between the parties was not changed, no intent to defraud could be found. With respect to another insufficient check charge, Merchant argues that venue and jurisdiction did not exist in Laramie County because the checks were issued in Platte County.

■ The novel and unusual argument set forth by Merchant regarding the two counts charging larceny by bailee must be rejected. If, after reviewing all the evidence and appropriate inferences therefrom in the light most favorable to the State, we conclude that a reasonable jury could have found Merchant guilty beyond a reasonable doubt, his convictions should be affirmed. Merchant argues that the evidence does not establish that he had the requisite "intent to deprive." "Deprive" is defined in Wyo. Stat. Ann. § 6–3–401(a)(ii) (Lexis 1999):

(A) To withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value or with intent to restore only upon payment of reward or other compensation; or

(B) To dispose of the property so as to make it unlikely that the owner will recover it.

One of the larceny counts involved a sale of a truck to DJ on July 8, 1994. However, DJ was not given title to the truck. After repeated attempts at retrieving the title, DJ reported the matter to the police. Merchant then delivered the title to DJ on December 15, 1994, five months after the initial purchase. Merchant wants this Court to believe that holding the title to the truck and not the truck itself is excluded from this statutory definition. However, there was ample evidence introduced at the trial that DJ was unable to use his truck, particularly after the temporary license plate tags expired, because without proof of title he could not drive it except on private property. Merchant did appropriate its economic value from DJ for more than five months.

■ The other larceny count arose out of the sale of a truck, owned by RS, on consignment. Merchant agreed to sell the truck, pay off the balance RS owed on the truck, and remit to RS any amount that was not paid to the loaning bank. The consignment agreement provided that RS would be entitled to the difference between $13,500.00 and the encumbrance on the truck, which was $12,966.00. The record demonstrates that RS never received that difference, a sum of $534.00. Merchant argues that this "minor" and temporary deprivation falls outside the purview of the Wyoming statute.

Our prior case law demonstrates that in instances of temporary deprivations similar to the ones in this case, the jury can reasonably find intent to deprive. *Brett v. State,* 961 P.2d 385, 391 (Wyo.1998). There was sufficient evidence in the record to support a finding of guilty by the jury in the district court. There was, therefore, no error in denying Merchant's motion for judgment of acquittal as to these counts.

■ The claim of error regarding the count involving the pre-existing debt is readily resolved. Merchant argues that writing a check with "insufficient funds" to cover a pre-existing debt does not satisfy the "intent to deprive" element of Wyoming's check fraud statute, Wyo. Stat. Ann. § 6–3–702 (Lexis 1999). His argument is that the creditor has not lost anything by virtue of the check because the status quo has not changed, and the creditor still has his claim for the debt. Wyo. Stat. Ann. § 6–3–701 (Lexis 1999) provides, in pertinent part:

Definitions
* * *

(ii) "Knowingly issues" means issuing a check to obtain property or *to pay a debt* with intent to defraud or deceive any other person * * *.

(Emphasis added.) The Wyoming statute plainly intends to proscribe the paying of a pre-existing debt with an insufficient funds check. The intent to defraud can be inferred under the circumstances, and the crime is committed when the check is furnished with the requisite intent.

■ In another count of check fraud, two checks were given to an automobile dealer in Wheatland. Merchant contends the checks were issued in Platte County. Merchant ar-

gues that the venue and jurisdiction, in this case Laramie County, were improper and that this count should have been dismissed. There is contradictory evidence, however, that Merchant's usual practice was to prepare checks in his Cheyenne office by typing the date and the name of the designated payee, as well as stamping the amount on the check using a machine. The evidence is sufficient to permit a reasonable juror to find that he followed that practice in the instance of these two checks, and such evidence serves to support the venue.

▓▓▓ We also agree with the State that venue in criminal cases can be invoked in either the location where the offense is committed or where the *corpus delicti* is found. Wyo. Stat. Ann. § 1–7–102 (Lexis 1999). If the location of the crime cannot be established with certainty, it is constitutionally permissible to place venue in the location where the essential facts comprising the crime are discovered. The facts presented at trial clearly show that the bank on which this check was written was located in Cheyenne, which is in Laramie County.

▓▓ We agree with the State that Merchant's claim of vindictive prosecution is not well founded. On April 12, 1995, the State filed a felony information in Laramie County Court charging Merchant with a single count of obtaining property by false pretenses. When the preliminary hearing was held, on October 21, 1996, the county court found that there was insufficient probable cause to bind Merchant over to the district court and dismissed the case. Three days later, on October 24, 1996, the State filed a new information charging Merchant with one count of obtaining property by false pretenses and two counts of check fraud. If the prosecutor acted in "good faith and for independent reasons or due to intervening circumstances," then the rule against vindictive prosecution cannot be invoked. *Crozier v. State*, 882 P.2d 1230, 1233 (Wyo.1994).

In reviewing claims of vindictive prosecution, we have adopted this method:

A defendant has the burden of proof and must establish either (1) actual vindictiveness, or (2) a realistic likelihood of vindic-

tiveness which will give rise to a presumption of vindictiveness. Thereafter, the burden shifts to the prosecution to justify its decision with legitimate, articulable, objective reasons. If the defendant does not meet his burden of proof, however, the district court need not reach the government justification issue.

*Whiteplume v. State*, 874 P.2d 893, 896 (Wyo. 1994) (*quoting United States v. Raymer*, 941 F.2d 1031, 1040 (10th Cir.1991)).

We have discussed the concept of vindictive prosecutions in other cases, and in one involving a conspiracy prosecution after a conviction for the actual offense was reversed for lack of a speedy trial, we said:

Where a defendant has exercised a legal right and the government responds in a way that punishes him for taking such action, an improper vindictive motive is presumed. *United States v. Goodwin*, 457 U.S. 368, 373–74, 102 S.Ct. 2485, 2488–89, 73 L.Ed.2d 74 (1982). The presumption arises when the government acts by imposing increased charges, such as changing a charge from a misdemeanor to a felony or subjecting him to the possibility of greater sentence or in some other way "upping the ante." *Blackledge v. Perry*, 417 U.S. 21, 28, 94 S.Ct. 2098, 2102–03, 40 L.Ed.2d 628 (1974); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

A decision to prosecute for other crimes committed does not necessarily result in a finding of vindictiveness. Here, the conspiracy charges did not result in a greater imposition of a penalty than Phillips received at the earlier trial on separate charges. *See Blackledge*, 417 U.S. at 28, 94 S.Ct. at 2103. *Cf. Lane v. Lord*, 815 F.2d 876, 879 (2nd Cir.1987) (adding a conspiracy charge in new trial after declaration of a mistrial not vindictive). The conspiracy and the substantive charges were two separate components in a continuing criminal episode. We have held that requiring the actor to take responsibility for each criminal act in the episode following successful appeal does not constitute vindictive prosecution even when consecutive life sentences result. *Osborn v. State*, 806 P.2d 259, 264–65 (Wyo.1991).

Charging decisions rest within the discretion of the prosecutor. *Billis v. State,* 800 P.2d 401, 417 (Wyo.1990). A charging decision is not improper unless it results solely from the defendant's exercise of a protected legal right, rather than the prosecutor's normal assessment of the societal interest in prosecution. *Goodwin,* 457 U.S. at 380, n. 11, 102 S.Ct. at 2492, n. 11. The public's demand for prosecution for the additional crimes may figure into the prosecutor's assessment without it resulting in vindictiveness. *Hardwick v. Doolittle,* 558 F.2d 292, 301 (5th Cir.1977). We cannot conclude nor can we allow the presumption that prosecutorial vindictiveness was involved in the decision to bring and prosecute conspiracy charges against Phillips.

*Phillips v. State,* 835 P.2d 1062, 1070 (Wyo. 1992).

The *Phillips* case assumes that vindictive prosecution is a mixed question of law and of fact, and we defer to the trial court's factual determinations relating to that issue unless its decisions are clearly erroneous. Questions of law must be reviewed *de novo.* Merchant argues that after he exercised one of his constitutional rights, in this case his right to a preliminary hearing, in which it was concluded that there was not probable cause to bind Merchant over for trial for that charge, the State then "upped the ante" to a more serious charge thus implicating the rule against vindictive prosecution. The district court found that Merchant did not establish either actual vindictiveness or a realistic likelihood of vindictiveness that would raise a presumption of vindictiveness, and we give deference to those findings. In this instance, the burden never shifted to the State to justify its decision to file other charges.

In summary, we hold that the Agreement on Detainers was not violated; the district court did not err in giving Instruction 4E; the district court did not improperly deny Merchant's motion for judgment of acquittal as to four counts; and the filing of additional charges did not constitute vindictive prosecution by the State.

The Judgment and Sentence of the Court entered in the district court is affirmed in every respect.