**Christopher ELLISON, Appellant (Defendant),**

**v.**

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 98–89.**

Supreme Court of Wyoming.

April 6, 2000.

Representing Appellant: Sylvia L. Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Walter Eggers III, Assistant Public Defender.

Representing Appellee: William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Robin Sessions Cooley, Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; and Sheri K. Jones, Student Intern.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR, * JJ.

THOMAS, Justice.

In this appeal, the primary complaint of Christopher Ellison (Ellison) addresses an instruction to the jury that he asserts created a mandatory presumption. He was charged with making a terroristic threat in violation of Wyo. Stat. Ann. § 6–2–505 (Lexis

1999),[1] and the instruction dealt with the intent to cause serious public inconvenience articulated in the statute. Ellison also contends that MY, the female co-owner of the establishment against which the threat was made, should not have been permitted to testify about her purchase of a pistol after the threat was uttered. Our review of the record in light of the pertinent authorities persuades us that the instruction did not create a mandatory presumption, and no error can be found in the giving of the instruction. The admission of the testimony concerning the pistol was discretionary on the part of the trial court, and we fail to discern any abuse of the court's discretion. The Judgment and Sentence entered in the trial court is affirmed.

This statement of the issues is found in the Brief of Appellant, filed on behalf of Ellison:

I.  Did the district court improperly relieve the State of its burden to prove each element of the charge when the court instructed the jury that the summoning of police and fire agencies was a "serious public inconvenience"?

II. Should [MY] have been allowed to testify she bought a gun after her argument with appellant?

In the Brief of Appellee, filed by the State of Wyoming, the issues are stated in this way:

I.  Did the district court properly instruct the jury that in determining whether a "serious public inconvenience" had been proved, it should consider all the evidence of inconvenience, including inconvenience caused by summoning police and fire agencies?

II. Whether [MY]'s testimony that she purchased a pistol in response to appellant's threats, was relevant to elements of the crime of making terroristic threats.

On May 13, 1996, Ellison, accompanied by his two year old son and an adult companion,

---

* Retired November 2, 1998.

1.  Wyo. Stat. Ann. § 6–2–505 provides:
    (a) A person is guilty of a terroristic threat if he threatens to commit any violent felony with the intent to cause evacuation of a building, place of assembly or facility of public transpor-

tation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such inconvenience.
    (b) A terroristic threat is a felony punishable by imprisonment for not more than three (3) years.

went into Frosty's Bar and Lounge in Casper. They seated themselves at a table near the bar. MY, a co-owner of the bar, promptly informed Ellison that he could not bring the child into the bar and he would have to leave. Ellison responded with anger and belligerence, and he threatened to kill MY and burn Frosty's down. Ellison then left Frosty's and obtained a gasoline can from his truck. He threw gasoline on the exterior wall of the bar, and quickly drove away.

A patron of the bar called 911 and reported the incident. The call produced a prompt response from both the police and fire departments. Investigators found a wet spot on the wall and sidewalk that smelled of gasoline. Samples were collected and sent to the State Crime Laboratory, which confirmed that the substance was gasoline. Ellison was arrested by Casper police officers, and on May 14, 1996, an information was filed in Natrona County Court in which he was charged with making a terroristic threat in violation of Wyo. Stat. Ann. § 6–2–505.

On June 6, 1996, after a preliminary examination, Ellison was bound over to the district court for trial. On August 24, 1996, Ellison entered a plea of not guilty at his arraignment, and a jury trial was held on October 21 and 22, 1996. At the trial, over a defense objection that such testimony was irrelevant, MY testified that, in response to Ellison's threats, she had purchased a pistol and had begun to practice firing it. After the evidence was completed, the jury was given Instruction No. 7, which reads:

> YOU ARE INSTRUCTED that in determining if a "serious public inconvenience" has been proven in this case, you should consider all of the evidence including evidence of inconvenience to individuals within the building at the time of the alleged threat, as well as the inconvenience caused by the summoning of police or fire agencies.

No objection was made to the giving of Instruction No. 7 to the jury.

The jury returned a guilty verdict against Ellison. On January 6, 1997, he was sentenced to a term of not less than twelve months nor more than thirty months to be served in the Wyoming State Penitentiary. Ellison appeals from the Judgment and Sentence.

■ In his first claim of error, Ellison argues that Instruction No. 7 contained a mandatory presumption which relieved the State of its obligation of establishing every element of the offense beyond any reasonable doubt. Since Ellison made no objection at trial, W.R.Cr.P. 30, applied literally, would foreclose review. It provides:

> No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury is instructed, stating distinctly the matter to which the party objects and the grounds of the objection.

Relief from the failure to object, however, may be found in W.R.Cr.P. 52(b), which says, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In the absence of objection at trial, we can consider this claim of error only under our test for plain error. *Ortega v. State*, 966 P.2d 961, 966 (Wyo.1998).

■ Our requirements for plain error first were identified in *Hampton v. State*, 558 P.2d 504, 507 (Wyo.1977). The plain error doctrine was applied with respect to a failure to object to a jury instruction in *Sandy v. State*, 870 P.2d 352, 358 (Wyo.1994):

> Plain error exists when 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right which materially prejudiced him. *Porth v. State*, 868 P.2d 236, 241 (Wyo. 1994).

It has been consistently applied by this Court with respect to claims of error arising out of jury instructions. *Yetter v. State*, 987 P.2d 666, 668 (Wyo.1999); *Ortega*, 966 P.2d at 966; *Cook v. State*, 929 P.2d 518, 521 (Wyo.1996); *Hodges v. State*, 904 P.2d 334, 341 (Wyo. 1995).

Ellison attacks Instruction No. 7 by asserting that it incorporated a mandatory presumption to the effect that the summoning of police and fire agencies constituted a serious

public inconvenience, and he argues that the State was relieved of its burden of proving that element of the offense by the instruction. Relying upon *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Warren v. State*, 835 P.2d 304 (Wyo.1992); and *Krucheck v. State*, 671 P.2d 1222 (Wyo.1983), Ellison contends that he was denied due process of law under Wyo. Const. art. 1, § 6 and the Fourteenth Amendment to the Constitution of the United States, and further that the requirements of W.R.E. 303 were not satisfied. Ellison omitted from his argument any reference to *Harley v. State*, 737 P.2d 750 (Wyo.1987).

In *Harley*, 737 P.2d at 754, we stated:

The concept established in *Sandstrom v. Montana*, supra, which is explained in *Francis v. Franklin*, supra, is not novel or unique in Wyoming jurisprudence. In *Krucheck v. State* Wyo., 671 P.2d 1222 (1983), aff'd. on appeal after remand 702 P.2d 1267 (1985), *Sandstrom v. Montana*, supra, was relied upon in part by this court in reversing a criminal conviction because the trial judge gave a mandatory inference instruction. In addition to holding that the mandatory inference violated due process, we also pointed out that the court had failed to comply with Rule 303(c), W.R.E.

In *Krucheck*, considering substantially the same arguments, the court said, in part reiterating principles from an earlier case:

Clearly the Wyoming Rules of Evidence were violated, as was the Fourteenth Amendment. When a jury is authorized to make use of presumptions, it must be informed that it may refuse to use them. As this court has previously said:

" * * * The use of the presumption assists the prosecutor in not having to produce evidence of intention, at least until the presumption is rebutted. But it clearly denies the jury of the opportunity to make up its own minds on the question of intention because there is no probative evidence introduced from which it can base its own finding. In this respect, the presumption instruction is diametrically opposite that of the use

of deductions and inferences which the jury may logically and properly draw from facts and circumstances introduced which point toward intention. [Citations.]" *Stuebgen v. State*, Wyo., 548 P.2d 870, 884–885 (1976).

*Krucheck*, 671 P.2d at 1225.

In *Harley*, 737 P.2d at 754, this Court undertook a comprehensive analysis of the invocation of presumptions in criminal cases. We opened that discussion by saying:

Evidentiary presumptions are unconstitutional if they "have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." *Francis v. Franklin*, supra, 105 S.Ct. at 1970; *Sandstrom v. Montana*, supra; *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Brooks v. State*, Wyo., 706 P.2d 664 (1985); *Krucheck v. State*, supra. Conversely, permissive inferences meet constitutional mandates so long as the connection between the inferred fact and the proven fact is one that reason and common sense justify in the light of the facts in a particular case. *Francis v. Franklin*, supra.

*Harley*, 737 P.2d at 754. We adopted the classification by the Supreme Court of the United States embracing "mandatory presumptions, which tell the jury that it must infer presumed facts if the state establishes predicate facts," and "permissive presumptions, which advise the jury that a possible conclusion may be drawn if the state establishes predicate facts, but the jury is not required to draw the inference." *Harley*, 737 P.2d at 754. We also recognized the classification of mandatory presumptions as "either irrebuttable or conclusive or rebuttable," noting that both are unconstitutional. The irrebuttable or conclusive mandatory presumption transgresses constitutional requirements because it removes an element of the offense from the consideration of the jury. The rebuttable mandatory presumption falls afoul of constitutional principles not because it removes an element from the consideration by the jury, but because of its effect of relieving the State of the burden of persuasion as to the element to which it

attaches. We then adopted this test for determining the nature of the instruction:

> In analyzing the instruction to determine its nature, the court should determine how the instruction on the inference would be understood by a reasonable juror. *Francis v. Franklin,* supra. The verb which is used, "may" or "shall" or "must," is afforded a high degree of significance in applying this test.

*Harley,* 737 P.2d at 754–55.

▮ Ellison and the State agree that this Court reviews jury instructions as a whole without singling out individual instructions or parts of instructions. The parties cite *Vigil v. State,* 859 P.2d 659, 663 (Wyo. 1993) and *Collins v. State,* 854 P.2d 688, 700 (Wyo.1993). This rule, having persisted for a full one hundred years (*Streitmatter v. State,* 981 P.2d 921, 925 (Wyo.1999); *Ross v. State,* 8 Wyo. 351, 57 P. 924, 930 (1899)), must be said to be not only well established, but indeed venerable. Our examination of the jury instructions in this case, as a whole, convinces us that the trial court correctly and fairly instructed the jury. The very first instruction admonished the jury "not to single out any certain sentence, or any individual point or instruction," but rather to "consider all the instructions as a whole" and "regard each [instruction] in the light of all the others." Instruction number four specified that the prosecution had the burden of proving each element of the offense beyond a reasonable doubt, and in specifying the elements of the crime, it listed:

> 5. With the intent to cause or in reckless disregard of causing;
>
> 6. Evacuation of a building or otherwise to cause a serious public inconvenience.

Even Instruction No. 7 told the jury to "consider all of the evidence."

The instructions directed the jury to reach a verdict based solely on the evidence, and did not create a mandatory presumption. The instructions did not deprive the jury of the opportunity to consider any element of the charged crime nor did these instructions relieve the State of the burden of persuasion as to any element. Ellison hinges his argument upon language selected out of Instruction No. 7, "as well as the inconvenience caused by the summoning of police or fire agencies." We perceive this instruction as definitional in context, and as advising the jury to "consider all of the evidence including evidence of inconvenience to individuals within the building at the time of the alleged threat, as well as the inconvenience caused by the summoning of police or fire agencies," in arriving at a determination of whether Ellison had either the intent to cause or acted in reckless disregard of causing "serious public inconvenience."

The trial court could have more artfully worded Instruction No. 7 by specifically advising the jury that "in determining if a serious public inconvenience has been proven in this case, you should consider all of the evidence including evidence of inconvenience, *if any you so find,* to individuals within the building at the time of the alleged threat, as well as *evidence of* the inconvenience, *if any you so find,* caused by the summoning of police or fire agencies." We are satisfied, however, that a reasonable juror would not have considered this instruction as requiring a finding that Ellison acted with the requisite "intent to cause or in reckless disregard of causing * * * a serious public inconvenience." The jury was told that it "should consider all of the evidence" in reaching a determination, not that it should or must make a particular determination.

Furthermore, Ellison's argument ignores the proposition that the State was not required to prove that a "serious public inconvenience" occurred. It only needed to prove that Ellison made his threats "with the intent to cause or in reckless disregard of causing" one. The Wyoming statute is based on the Model Penal Code provision. Theodore E. Lauer, *Goodbye 3–Card Monte: The Wyoming Criminal Code of 1982,* 19 Land & Water L.Rev. 107, 134 (1984). The comments to the American Law Institute, Model Penal Code § 211.3. (M.P.C. part 2, Vol. 1, at 204–207) demonstrate that the legislature did not intend to require the State to prove that the defendant actually caused a serious public inconvenience. The comments explain that "[e]ven where the actor has no intention of actually carrying out his threat, it occasions certain identifiable harms that are ap-

propriate for redress by the penal law." The comments continue and also say "[w]here the threat involves destruction in a public place, there is the serious inconvenience of evacuation and the like. For these reasons, Section 211.3 proscribes terroristic threats without regard to their sincerity." Since the rules relating to presumptions address elements of a crime, the definition of a phrase in the elements instruction does constitute a presumption even if erroneous.

■ In arguing his second issue, Ellison contends that the trial court erred when it allowed MY to testify that she purchased a pistol and took other precautions in response to Ellison's threats. We afford considerable deference to a trial court's evidentiary rulings, and will not disturb them absent an abuse of discretion. *E.g.,* *Newport v. State,* 983 P.2d 1213, 1217 (Wyo.1999); *English v. State,* 982 P.2d 139, 143 (Wyo.1999); *Horton v. State,* 764 P.2d 674, 676–77 (Wyo.1988); *Sanville v. State,* 593 P.2d 1340, 1345 (Wyo. 1979). In *Vaughn v. State,* 962 P.2d 149, 151 (Wyo.1998), we confirmed our adoption, in *Martin v. State,* 720 P.2d 894, 897 (Wyo. 1986), of this definition of an abuse of discretion:

> "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Byerly v. Madsen,* 41 Wash.App. 495, 704 P.2d 1236 (1985)."

In applying this standard, we primarily are concerned with the objective criteria found in the record, and whether sound judgment with respect to what is right under the circumstances is demonstrated. An affirmative answer to those queries usually demonstrates a ruling that is neither arbitrary nor capricious.

■ Ellison's claim is that MY's testimony was irrelevant and more prejudicial than probative. The State claims that the testimony was relevant because it showed that Ellison's threats were more than practical jokes and that his hearers took him seriously. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.R.E. 401. The testimony is relevant if it tends to prove a meaningful part of the State's case.

■ The comments to the Model Penal Code, inform that "threats of personal attack insufficiently grave to amount to terrorization" are excluded from punishment under the statute. The testimony from MY demonstrated that Ellison's threats were perceived as serious, and thus supported a legitimate goal of the prosecution. This is consistent with our decision in *McCone v. State,* 866 P.2d 740, 752 (Wyo.1993), in which we held the trial court properly admitted testimony about the impact on other people of the defendant's threats. We determined such testimony was relevant "because it was probative of the risk of serious public inconvenience and was not unduly prejudicial." *Id.* at 752.

We hold that no error, plain or otherwise, can be found in Instruction No. 7. The trial court did not abuse its discretion in the admission of MY's testimony. The Judgment and Sentence entered in the district court is affirmed.